LILLIAN KOSKI v. JEANETTE MUCCILLI AND OTHERS.[1]

January 7, 1938.

No. 31,378.

*Gillette, Nye, Harries & Montague* and *W. O. Bissonett,* for appellant.

*C. G. Lindquist, Warner E. Whipple,* and *George W. Atmore, Jr.,* for respondent.

PETERSON, JUSTICE.

Plaintiff, as special administratrix of the estate of Toivo Kolander, recovered a verdict of $7,500 against G. J. Howard and Jeanette Muccilli in an action to recover damages for the death of

[1]Reported in 277 N. W. 229.

Kolander, killed on October 4, 1936, when an automobile in which he was riding collided with an automobile owned by Howard and operated by Jeanette Muccilli. Defendant Howard appeals from the order denying his motion for judgment notwithstanding the verdict or for a new trial. The assignments of error present the questions (1) whether the verdict, insofar as it establishes that Jeanette Muccilli was operating the automobile with defendant's consent, is justified by the evidence; and (2) whether the verdict is excessive.

Defendant Howard operates a garage and automobile agency in Superior, Wisconsin. He sells and exchanges used cars and is the agent for Chrysler, Plymouth, LaSalle, and Cadillac automobiles. Jeanette Muccilli is a resident of Duluth, Minnesota. For about 30 days prior to October, 1936, Miss Muccilli negotiated with defendant about the purchase of an automobile. Howard regarded Miss Muccilli as a "live prospect for a Plymouth automobile." She did not confer directly with defendant, but through her friend Borg, a police officer in Superior and long-time friend of defendant, she made known to defendant her desire and intent to purchase an automobile from him. Likewise, acting through Borg, defendant solicited Miss Muccilli's purchase by delivering cars to Borg, who was in turn to deliver them to Miss Muccilli in order that she might operate the cars at her pleasure and so test and demonstrate for herself their desirability. When Borg obtained the cars for Miss Muccilli defendant knew the purpose for which they were taken, and he testified that when Borg had the cars "there was no restriction upon his use of them." This practice of delivering cars to Miss Muccilli for demonstration was followed on numerous occasions during the 30 days before October, 1936. Miss Muccilli testified that she "had a car about twice a week." The cars were always delivered to her by Borg. Three of the times the car used by Miss Muccilli was the one involved in the accident, a 1935 Chrysler. When the cars were delivered to Miss Muccilli by Borg she used them entirely for her pleasure and personal convenience.

Borg's permitting Miss Muccilli to use the car was not different from the practice of other salesmen, all of whom had power to

permit prospective customers to use cars for purposes of demonstration. Defendant testified that he frequently permitted prospective purchasers to have the use of cars to demonstrate them themselves. Allowing Miss Muccilli to use this car was in line with this course of conduct. There is evidence that the sales manager from whom the car was obtained was in general charge of things when Mr. Howard was absent and that he let Borg have this car pursuant to the practice which had been established at the garage. Borg delivered the car to Miss Muccilli on the evening of October 3. He testified that he called at defendant's garage about eight o'clock p. m., while the garage was open for business. Defendant's sales manager backed the 1935 Chrysler out of the garage and "turned it over" to Borg. Borg drove to Duluth, met Miss Muccilli, and they returned to Superior. Borg then turned the car over to Miss Muccilli. There is testimony that Borg was acting as "agent between the Howard Motor Company and Miss Muccilli" at the time he turned the car over to her. About ten o'clock that evening Miss Muccilli drove the car back to Duluth. The accident occurred early the following morning. The testimony of Borg and defendant is that defendant was not at his garage the night of October 3 when Borg obtained the car and did not know until the next day that Borg had taken the car.

■ It is claimed that Miss Muccilli was operating the automobile at the time of the collision "with the consent of the owner [Howard] express or implied," by reason of which she is to be deemed his agent in the operation thereof, under the provisions of L. 1933, c. 351, § 4, 3 Mason Minn. St. 1936 Supp. § 2720-104. The assignment of error raises only the question whether or not the evidence sustains a finding of such consent. There is no formula by which it can be determined whether an automobile has been used or operated with the consent or permission of the owner within the meaning of the statute. In each case it is a question of fact or of fact and law. Consent may be inferred from all the facts and circumstances of the case. Steinle v. Beckwith, 198 Minn. 424, 270 N. W. 139; Kerns v. Lewis, 249 Mich. 27, 227 N. W. 727; Lidtka v. Wagner,

253 Mich. 379, 235 N. W. 189; 5 Am. Jur., Automobiles, § 401; note, 83 A. L. R. 878.

Defendant's business was to sell cars. It would therefore be natural that he would desire to have the qualities of his cars known by as many people as possible and, to that end, permit prospective purchasers to have the use of them for demonstration and to cultivate their good will. Holmes v. Lilygren Motor Co. Inc. 201 Minn. 44, 275 N. W. 416. There is evidence that the sales agents had power to let cars out to prospective customers for demonstration purposes. The jury could infer that the general sales manager, who was in full charge when defendant was not present, had authority to let cars out in furtherance of defendant's business. There is evidence that a general practice to that effect prevailed, that Borg had received cars of different makes many times pursuant to such practice, and that Miss Muccilli had been given a car many times before. The evidence tends to show that she was permitted to use cars for promotion of a sale by cultivating her good will and permitting her to do her own demonstrating. There is evidence to show that at the time Borg turned the car over to Miss Muccilli he was acting as the agent of defendant. The denials of authority on the part of defendant do not cover the general authority and practice but relate to the authority on the particular night. The jury might have adopted defendant's testimony in this regard and yet have found that the course of conduct pursued by defendant in allowing prospective customers, and Miss Muccilli in particular, to use cars for the purposes stated, gave rise to a general consent which comprehended her operation of the car on this occasion. From a series of facts establishing consent freely given in a number of instances, the jury could infer a consent in this particular situation. The general sales manager did not deny that he had authority to allow Borg to take the car. The weight of the testimony was for the jury. Sina v. Carlson, 120 Minn. 283, 139 N. W. 601; Jensen v. Fischer, 134 Minn. 366, 159 N. W. 827; Shotts v. Standard Oil Co. 181 Minn. 386, 232 N. W. 712.

Defendant contends that this case comes within the rule of Ewer v. Coppe, 199 Minn. 78, 271 N. W. 101; Abbey v. Northern States

Power Co. 199 Minn. 41, 271 N. W. 122; and Patterson-Stocking, Inc. v. Dunn Bros. Storage Warehouses, Inc. 201 Minn. 308, 276 N. W. 737. It is sufficient to say that these cases are factually not in point. In each of them it was claimed that the acts of the agent were outside the scope of his employment. As to the particular act, it was claimed there was no consent. In this case there is no claim that the acts were beyond any consent that had been given. Defendant claims that there was no consent at all, and that was the issue submitted to the jury. We have examined the other cases cited by defendant and find they are not in point. They involve cases in which either no consent was given to do the particular act or the act was outside of the scope of the consent given. It is unnecessary to discuss these cases at length. Our conclusion is that the verdict is sustained by the evidence.

■ It is claimed that the verdict is excessive. The question of damages was submitted to the jury in a charge to which no exception is taken. The deceased was a young man, a little over 27 years of age, who lived with his father and mother. He was steadily employed, of an industrious and frugal nature, and since he was 16 years of age had contributed substantially all of his earnings to his family. His aged father, who was seldom employed, testified that he depended upon his sons for support, and this support came almost entirely from the earnings of deceased. From the time he commenced working, when he was 16, deceased's earnings averaged around $80 a month, and he turned practically the entire amount into the home. He was healthy and rugged at the time of his death. The jury was properly instructed that it might consider deceased's occupation, his income therefrom, his health, age, probable duration of life, habits of industry and frugality, and the amount of aid in money which he had customarily furnished to those dependent upon him. Considering all of these circumstances and the fact that had he lived deceased might easily have contributed to his dependent parents during the normal expectancy of their lives an amount in money and services equal to the recovery, the verdict, while it could fairly have been in a lesser amount, is not so plainly excessive as to necessitate overruling the trial court's determina-

tion that the jury was justified in making the award it did. Noe v. G. N. Ry. Co. 168 Minn. 259, 209 N. W. 905; Anderson v. Anderson, 188 Minn. 602, 248 N. W. 35; McMahon v. Flynn, 154 Minn. 326, 191 N. W. 902; Hartel v. Warren, 196 Minn. 465, 265 N. W. 282; Waggoner v. Gummerum, 180 Minn. 391, 231 N. W. 10.

The order is affirmed.