MINNESOTA MUTUAL LIFE INSURANCE COMPANY v.
NEWELL R. JOHNSON AND OTHERS.[1]

June 19, 1942.

No. 33,142.

*J. A. A. Burnquist,* Attorney General, and *Edward J. Devitt,* Assistant Attorney General, for appellants.

*Orr, Stark & Kidder,* for respondent.

HOLT, JUSTICE.

From the order overruling defendants' demurrer to the complaint, they appeal, the court having certified the questions involved to be important and doubtful. The case was argued and opinion filed. A rehearing was granted and had. The former opinion[2] is withdrawn.

The allegations of the complaint may be summarized thus: Plaintiff is a life insurance corporation organized under our laws and here licensed to do business. Defendants are the state insurance commissioner, the attorney general of the state, and the county attorney of Ramsey county. Plaintiff filed a rider, a copy of which is attached to and made a part of the complaint, with the insurance commissioner May 13, 1941, limiting aviation coverage as authorized by L. 1941, c. 218 (Mason St. 1941 Supp. § 3406). The insurance commissioner, on May 28, 1941, notified plaintiff that he would not permit the use of said rider because he denied the valid enactment of c. 218, and also because, if validly enacted, he, the insurance commissioner, was vested with discretion thereunder to approve or disapprove such rider, and, in his opinion, the filed rider ought not be used. The importance of the question to plaintiff, and to other life insurance companies doing

[2]Filed February 27, 1942, but not published.

business in this state, in view of Mason St. 1927, §§ 3406, 3756, and 3762, is fully alleged. Plaintiff asks that a declaratory judgment be rendered that L. 1941, c. 218, is a valid enactment; and also that the rider attached to and made a part of the complaint is in proper form under said c. 218, and that the insurance commissioner is not justified in prohibiting its use.

To determine whether or not a law has been duly enacted, the court may examine the proceedings of the legislature filed or deposited in the office of the secretary of state. This includes the journals of the senate and house, the engrossed bills, the enrolled bills, and the printed proceedings. The early case of Board of Supervisors of Ramsey County v. Heenan, 2 Minn. 281 (330) so held. It has been adhered to since. The examination discloses that H. F. No. 767 was introduced in the house of representatives of the legislature on February 21, 1941, referred, reported back as amended, read the third time March 29, 1941, and on the same day passed and transmitted to the senate, where it was read the first time on March 31, 1941, referred, reported back, read the second time, substituted for S. F. No. 811, considered in committee of the whole April 4, recommended to pass as there amended, read the third time April 8, and passed and returned to the house the same day. The house concurred in the senate amendments to H. F. No. 767, and repassed the bill April 8.

The journal entries of the senate show ten amendments to H. F. No. 767, adopted April 4. Each is numbered, thus:

"1. In the title line 2 strike 's' in word 'Sections' and strike '3402 and.'

"2. Strike out Section 1.

"3. Renumber Section 2 to read Section 1.

"4. Further amend page, line 2 after the figures '3406' by inserting 'Subdivision 1.'

"5. Further amend page 3, line 19, by striking out the figures '(5)' and inserting in lieu thereof 'Subdivision 2(1).'

\* \* \* \* \*

"6. Further amend page 3, line 20 by striking out the words 'in the event of death.'

"7. Further amend page 4 line 21 by inserting the word 'a' before the word 'riders' and by striking the letter 's' in the word 'riders.'

"8. Further amend page 4 line 23 after the comma after the word 'policy' by striking everything following in lines 23, 24, 25, 26, and 27.

"9. Further amend page 4, line 28, by striking the following '(b) A provision limiting coverage.'

"10. Further amend page 4 by striking out everything in lines 31 to 37 inclusive."

It is clear that amendments numbered 2, 8, and 10 are material, and if any one of the three was not in the bill when it passed, but now appears in the enrolled bill approved by the governor, there is a fatal variance. The lines stricken by the eighth amendment remain in the bill approved by the governor. Their presence cannot be overlooked under such cases as Sharp v. Merrill, 41 Minn. 492, 43 N. W. 385, or Bull v. King, 205 Minn. 427, 286 N. W. 311.

The rule is established in this state that as to matters which the constitution of the state requires the journals of the senate and house to contain or state, the requirement is mandatory, and if such journal entries are lacking the bill does not become a law. As to matters not so required to be shown in the journals, their absence has no effect on the validity of the enrolled bill.

In State ex rel. Kohlman v. Wagener, 130 Minn. 424, 153 N. W. 749, the court, after referring to our previous cases in respect to the presumption that a duly authenticated enrolled bill was duly enacted, states:

"This presumption of regularity in the passage of an act is not overcome by the failure of legislative journals to show that the constitutional requirements as to procedure were followed. The enrolled bill stands as law, unless it affirmatively appears on the

face of the journal that some constitutional requirement was not followed. Mere silence of the journal will not 'convict the legislature of having violated the constitution.'" (Citing authorities.)

There the claim was that the journal showed that the bill had been read twice the same day contrary to Minn. Const. art. 4, § 20, reading:

"Every bill shall be read on three different days in each separate house, unless, in case of urgency, two-thirds of the house where such bill is depending shall deem it expedient to dispense with this rule; and no bill shall be passed by either house until it shall have been previously read twice at length."

This constitutional provision has been very perplexing to the writer. The bill in question was read in the senate the third time four days after the ten amendments were adopted. So it could not have been read twice in the form in which it passed. It would seem to be necessary that when, at any stage in either house of the legislature, a bill has been so materially amended as the instant bill was, it must be engrossed before being read or put to a vote. The engrossed bill authenticated as the "Original" is in the exact form of L. 1941, c. 218; but there are attached thereto papers showing the journal entries of the ten amendments. And in an engrossed bill, which evidently was before the senate at the time the amendments were adopted, the amendments are made or indicated in red ink. Thus, § 1 is indicated stricken by a line drawn in red ink from the upper left corner of that section to its lower right and a line in red ink from the upper right corner to the lower left corner of the section. In § 2 the figure "2" is crossed out with red ink and over it the figure "1" has been placed in red ink. The words in amendment No. 8 were not crossed out in red ink or in any other way; but the lines 31 to 37 were crossed out by a line in red ink being drawn through the words thereof. So neither the enrolled bill nor any engrossed bill in the office of the secretary of state omits the lines stricken by senate amendment No. 8. And the reading clerk of neither the senate nor

house could have read bill H. F. No. 767, as passed by the senate and house April 8, 1941—the same date in both—without including in it the words and all of the words now in L. 1941, c. 218. In State ex rel. Minn. Ry. Const. Co. v. City of Hastings, 24 Minn. 78, the claim was that the bill there involved was not passed by the senate in compliance with Minn. Const. art. 4, § 20. The court stated that it was authenticated as prescribed by § 21 of said art. 4, and then went on to specify some of the provisions, of other sections of the same article, required to be shown in the journals of the two houses, and indicated that § 20 did not require the journals to show that by a two-thirds vote the reading on three different dates had been dispensed with. No decision has been referred to holding that the last clause of § 20, viz., "and no bill shall be passed by either house until it shall have been previously read twice at length," may be dispensed with. Surely the house, which received H. F. No. 767 on the same day as it was passed by the senate and on the same day concurred in the senate amendments and repassed the bill, had no opportunity to read it "twice at length."

Another matter presents itself. Nothing in art. 4 of the constitution requires that amendments to a bill must be entered in the journals, nor that, if entered, the amendments may not be withdrawn without that fact being entered therein. However, as to a bill being read, the contention is made that in legislative practice a bill is read "at length" by the reading of its title. My associates, possessed of more knowledge and experience than I of the workings of the legislature, agree with this contention of the state, and I reluctantly yield. It must be admitted that, as a practical matter, all bills passed could not well be read twice at length in the form passed and enrolled. The criminal code, the probate code, the workmen's compensation act, the various uniform acts, and bills of great length would take more time to read "twice at length" than could possibly be devoted thereto, especially during the last legislative days of the session.

The court concludes that the journal, and the engrossed bills and enrolled bill disclose that the omission to delete the lines by amendment No. 8 to H. F. No. 767 was a clerical error of the engrossing staff of the senate and vitiates L. 1941, c. 218.

Order reversed.