STATE v. ONE OLDSMOBILE TWO-DOOR SEDAN, MODEL
1946, MOTOR NO. 6-55506 H, SERIAL NO. 76-124761,
1947 LICENSE NO. 166-652.
LAKE REGION BEVERAGE COMPANY, BY
J. N. BOLLIG, ETC., APPELLANTS.[1]

December 31, 1948.

No. 34,709.

---

[1]Reported in 35 N. W. (2d) 525.

*Swanson, Swanson & Swanson,* for appellants.

*J. A. A. Burnquist,* Attorney General, *John H. Burwell,* Special Assistant Attorney General, and *Attell P. Felix,* County Attorney, for the State.

PETERSON, JUSTICE.

This is a proceeding under M. S. A. 97.50, subd. 2, by the state to confiscate an automobile used for the purpose of spotting a deer by means of the rays of a spotlight in violation of § 100.29, subd. 1(10).

Two questions have been raised, viz.: (1) Whether the evidence sustains a finding that Marvin Bollig was the owner of the automobile; and (2) whether the statute under which the proceedings were had is unconstitutional by reason of the fact that the enrolled bill approved by the governor differs in numerous respects from the bill actually passed by the legislature.

The cited sections were enacted as part of L. 1945, c. 248, which repealed Minn. St. 1941, 100.055, 100.056, and 100.057, relating to the same subject matter. Section 100.29, subd. 1(10), provides that it shall be unlawful:

"To throw or cast the rays of a spotlight, headlight, or other artificial light on any highway, or in any field, woodland, or forest, for the purpose of spotting, locating or taking any wild animal, * * * while having in possession or under control, either singly or as one of a group of persons, any firearm or other implement whereby big game could be killed, unless the same is unloaded in both barrels and magazine and properly encased or broken down;"

Section 100.29, subd. 1(11), provides that it shall be unlawful to transport deer taken in violation of chapters 97 to 102, of which the foregoing section is a part.

Section 97.50, subd. 2, provides that any motor vehicle used in violating § 100.29, subd. 1(10 and 11), shall be confiscated upon conviction of violation thereof of the person from whom the motor vehicle so unlawfully used was seized. Under the statute, the owner's lack of knowledge or notice of the unlawful use of the motor vehicle is a defense in a confiscation proceeding. The statute provides that after such conviction a complaint shall be filed for the confiscation of the automobile so unlawfully used, that there shall be an opportunity to answer and defend, and that there shall be a trial had upon the merits.

The repealed sections of Minn. St. 1941 read as follows:

"100.055. No person, whether singly or as one of a group of persons, shall have in possession or under control unless unloaded and properly encased, or broken down, any firearm or other implement whereby big game could be killed and at the same time throw or cast the rays of a spot-light, headlight, or other artificial light on any highway or in any field, woodland, or forest for the purpose of spotting, locating, hunting, catching, taking, killing, or wounding any big game animal.

"100.056. Any person violating any of the provisions of sections 100.055 to 100.057 shall be guilty of a gross misdemeanor and all motor vehicles, trailers, headlights, spot-lights, guns and firearms, or other contrivances and all paraphernalia used and possessed in violation thereof are hereby declared to be a public nuisance and subject to seizure and confiscation in accordance with law and the provisions of sections 100.055 to 100.057."

The 1941 statute provided in § 100.057 thereof a procedure for confiscation of automobiles used for spotlighting deer similar to § 97.50, subd. 2, of the 1945 statute. State v. One Buick Sedan Automobile, 216 Minn. 129, 12 N. W. (2d) 1, involved such a proceeding under the 1941 statute and cites the pertinent provisions thereof.

A complaint was filed here for the confiscation of the motor vehicle used by Marvin for the purpose of spotlighting deer in violation of statute. J. N. Bollig, doing business as Lake Region Beverage Company, and Marvin interposed separate answers denying (a) the allegations of the complaint setting forth grounds for confiscation and (b) alleging in substance that J. N. Bollig was the owner of the automobile and that he had no knowledge or notice that it was to be used in violation of the statute.

The evidence showed that on the night of November 20, 1946, Marvin was caught, while in possession and control of the automobile and while he had an uncased loaded 45-caliber rifle therein, in the act of casting upon a deer the rays from two spotlights attached to the automobile. Thereafter he was convicted of spotlighting deer in violation of § 100.29, subd. 1(10). The present proceeding was brought to confiscate the automobile because of such conviction.

The automobile was purchased on November 5, 1946 (15 days prior to the offense charged). J. N. Bollig, Marvin's father, paid the purchase price partly by a trade-in car and partly in cash. On that date the dealer made a bill of sale showing a sale of the automobile to the father and in January 1947 an invoice showing the facts thereof. The title to the automobile was registered in Marvin's name with the registrar of motor vehicles, who issued a certificate of such registration. The application for registration of title was prepared in the office of the dealer who sold the car. At the left on line 16 thereof appears the word "OWNER" in capital letters and the letter "X" in heavy type. Opposite that word and letter is a line extending across the application. Under the line near the word "OWNER" and the letter "X" appear the words "Owner must sign here," and at the right under the line appear the words "Print or type name here." The dealer made it a practice not to sell a car to a minor unless his parent signed with him. Marvin was a minor. After the application was prepared in the dealer's office in Marvin's presence, it was given to Marvin unsigned by him to procure his father's signature. The dealer and Marvin assert that the purpose was to obtain the father's signature as the owner of the automobile to be registered.

Marvin took the application to his father, who signed his name not on the line and in the space provided for the owner's signature, but under it, and then wrote in the space to the right of the one for the owner's signature "Lake Region Bev. Co." Marvin then returned to the dealer's office with the application and there signed his own name in the space for the owner's signature. The sign indicating "care of" was inserted before the words "Lake Region Bev. Co." When the application was presented to the deputy registrar of motor vehicles line 16 read:

"OWNER X Marvin Bollig c/o Lake Region Bev. Co.

Owner must sign here    (Print or type name here)
J. N. Bollig."

The deputy registrar then printed "Marvin Bollig" in the space provided for the purpose. The registrar then registered the automobile in Marvin's name and issued to him a certificate of such registration. There was testimony received without objection that Marvin held himself out as the owner of the automobile and stated at the time of his arrest that it belonged to him. The only use of it, shown by the record, was by Marvin. There was no evidence that the father ever used the automobile, controlled its use, or otherwise exercised dominion over it.

The trial court held that Marvin was the owner of the automobile and ordered that it be confiscated in the manner provided by statute.

Subsequent to the court's decision, Marvin and his father moved for a new trial upon numerous grounds, including that of newly discovered evidence consisting of a showing to the effect that the enrolled bill for the 1945 statute presented to the governor and approved by him differed from the bill as engrossed in each house of the legislature and actually passed by it. In the enrolled bill, the word "or" was substituted at least 11 times for the word "and" between provisions in the bill. For example, in § 97.50, subd. 2, the bill actually passed by the legislature provided for confiscation of a motor vehicle upon conviction of a violation of § 100.29, subd. 1(10 and 11). In the enrolled bill, the word "or" was substituted

for the word "and." Under subd. 1(10 and 11), the respective offenses of spotlighting deer and transporting deer unlawfully taken in violation of chapters 97 to 102, which includes taking by spotlighting, are separate offenses. There were still other variances. In the bill passed by the legislature (§ 101.41, subd. 2), the season for taking trout other than lake trout and suckers in trout streams was fixed as from May 1 to September 15. The enrolled bill showed a change of the latter date to September 30. The provision of the bill passed by the legislature fixing September 15 as the last day of the season for taking such fish was restored by the enactment of another statute, L. 1945, c. 583. In § 101.41, subd. 3, of the bill actually passed by the legislature, whitefish were not excluded from the classification of game fish, but in the enrolled bill they were.

The contention is that these variances between the enrolled bill approved by the governor and the bill actually passed by the legislature are material, for the reason that they change the legislative meaning; that, because this is true, the bill presented to the governor for his approval was not the same one passed by the legislature; and that, consequently, the 1945 statute is unconstitutional and void under the rule of cases like Minnesota Mut. L. Ins. Co. v. Johnson, 212 Minn. 571, 4 N. W. (2d) 625; Freeman v. Goff, 206 Minn. 49, 287 N. W. 238; and Bull v. King, 205 Minn. 427, 286 N. W. 311, construing and applying the pertinent constitutional provisions governing the enactment of statutes. The state admits the variances and contends that they are immaterial. In order so to hold, we are asked to resort to the limited power of construction possessed by us in such cases and by means thereof to say that the variances effected no change of legislative intention. See, Bull v. King, *supra*. In view of the ground of our decision of this point, we do not deem it necessary to further state the contentions of the parties, except to add that, in effect, the Bolligs' contention amounts to an assertion that there was no statute under which Marvin could have been lawfully convicted and the automobile confiscated.

■ Registration of a motor vehicle under the state motor vehicle law is prima facie, but not conclusive, evidence that the person in

whose name an automobile is registered is the owner thereof. Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582, and cases there cited. Hence, prima facie, Marvin was the owner of the automobile.

Aside from and independent of Marvin's prima facie ownership by reason of the registration of the automobile in his name, he also was presumptively the owner thereof. Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is the wife, child, or other natural object of the bounty of the person paying the purchase price, there is a presumption that the transaction is a gift, unless the person paying the purchase price manifests an intention that the transferee shall not have the beneficial interest in the property. Restatement, Trusts, § 442; 38 C. J. S., Gifts, § 65e. We applied the rule in holding that where money is delivered by a parent to his child a gift will be presumed, unless the parent manifests a contrary intention (In re Estate of Stahn, 192 Minn. 278, 256 N. W. 137; Jenning v. Rohde, 99 Minn. 335, 109 N. W. 597; see, 39 Am. Jur., Parent and Child, § 97), and in holding that where the transferee of property (an automobile) is the wife of the party paying part of the purchase price thereof a gift to her will be presumed, unless the husband manifests a contrary intention (State v. One Buick Sedan Automobile, 216 Minn. 129, 12 N. W. [2d] 1, *supra*).

The evidence here was such as to sustain the trial judge's view that the prima facie title in Marvin and the presumption of his ownership had not been overcome. When the application for the registration of the automobile was presented to the father, he deliberately signed his name below the space for the owner's signature and inserted the name "Lake Region Bev. Co." on the signature line to the right of such space. In view of the fact that Marvin arranged the details for the purchase of the automobile and the dealer would not sell to him without his father's signature, it seems reasonable to infer that the father intentionally signed below the space for the owner's signature in order to leave it blank for Marvin's signature as owner, which Marvin wrote therein after he returned to the dealer's garage with the application signed by his father, and that

the father signed in the manner he did to manifest assent to Marvin's taking title to the automobile and not for the purpose of signing as "owner" himself. This view is confirmed by the fact that in numerous prior instances the father had registered automobiles used in his business and in every such instance signed his name in the space for the owner's signature. This rather supports the view that in the case of Marvin's car he signed below that space for the purpose of enabling Marvin to sign as "owner," which he did. From previous experience, therefore, it appears that the father actually knew that the owner should sign his name in the space provided for that purpose; that an automobile should be registered in the name of the true owner; and that the consequence of registration under the motor vehicle law was to create prima facie evidence of title in the registered owner. By permitting Marvin to register the automobile in his own name, the permissible inference is that the father intended him to be the owner thereof. Furthermore, it was incumbent on the father to overcome the presumption of intended gift of the automobile to Marvin, arising from the father's payment of the purchase price of the automobile and the delivery thereof to Marvin by the dealer, by manifestation by him of an intention that Marvin was not to have the beneficial interest in the automobile. The intention manifested by the father was not that Marvin should not have the beneficial interest, but rather that he should have it. First, he permitted Marvin to clothe himself with title by registering the automobile in his own name. Next, he assented to a course of conduct on Marvin's part indicative of ownership such as his holding himself out as the owner. His statement at the time of his arrest that he was the owner was in line with such conduct. The father's own conduct, consisting of failure to exercise ownership, control, and dominion over the car, confirmed all other evidence of Marvin's ownership. The bill of sale from the dealer to the father and the statement of the dealer showing the facts concerning the purchase of the automobile are not persuasive in view of the contemporaneous action of the father in having Marvin register the automobile in his (Marvin's) name as the owner thereof and other acts indicative of

Marvin's ownership. After all, the gift was from the father to Marvin; the father was paying the dealer for the car.

■ If, as appellants contend, the 1945 statute is unconstitutional, it is ineffective for any purpose, including that of repealing the 1941 statute. An unconstitutional statute, being void and inoperative, cannot repeal or in any way affect an existing one. State v. Luscher, 157 Minn. 192, 195 N. W. 914; 11 Am. Jur., Constitutional Law, §§ 148, 154. Hence, if we held the 1945 statute unconstitutional, the 1941 statute, which it attempted to repeal, would remain in full force and effect.

■ Courts will not decide questions relating to the constitutionality of statutes unless it is absolutely necessary to do so. Baugh v. County of Norman, 140 Minn. 465, 168 N. W. 348. In order to avoid the issue of constitutionality, courts will adopt an available alternative ground of decision. Where it is contended that an amendatory statute is unconstitutional and the question raised can be decided under the amended statute, the court, in order to avoid deciding the question whether the amendatory statute is unconstitutional, will in effect concede for the purposes of decision, but without so deciding, that the amendatory statute is unconstitutional and decide the question under the amended statute. Davidson v. Patnaude, 145 Minn. 371, 374, 177 N. W. 495, 497, where we said:

"* * * If we should hold that section 7 [the amendatory statute] is vulnerable to attack on either or both of the [constitutional] grounds now under consideration, section 2186 [the amended statute] would still be in effect, for the reason that in legal contemplation section 7 would be as inoperative as though it had never been passed."

We follow the rule here. The same reasons obtain. An amendatory act to the extent that it changes prior law in effect repeals it and substitutes the new law for it. Under the 1941 statute, the confiscation of the automobile was required upon the facts here found. State v. One Buick Sedan Automobile, 216 Minn. 129, 12 N. W. (2d) 1, *supra*.

Affirmed.