NORTHWESTERN NAT. CAS. CO. v. BETTINGER et al.

Civ. No. 2276.

United States District Court
D. Minnesota, Third Division.

March 31, 1953.

512

James E. Finley, St. Paul, Minn., for plaintiffs.

John J. McBrien, Farmington, Minn., for defendants.

Arthur J. Donnelly (of Sullivan, Stringer, Donnelly & Sharood), St. Paul, Minn., for intervenors.

DONOVAN, District Judge.

This is a proceeding under the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202, whereby plaintiffs seek a judgment declaring void on the grounds of misrepresentation of ownership, a certain automobile liability insurance policy issued by plaintiffs to the defendant Marie Bettinger, hereinafter called Marie. In the alternative, plaintiffs seek a judgment that Marie had no insurable interest in the automobile at the time of the accident.

Clara Egge and Lillian Hanson (successful plaintiffs in separate personal injury actions against the Bettingers) were allowed to intervene and with the defendants, contend that at all material times Marie was and is the owner of the automobile.

The policy, in the usual form, was issued August 14, 1951, to Marie, insuring her up to a $25,000 limit for any one person, or

$50,000 for any one accident, and $5,000 property damage for any loss incurred in the operation of a certain 1941 Studebaker. The policy by its terms expired in one year.

The policy contained declaration provisions under which, in Item 7, Marie reportedly stated she was the sole owner of the automobile, "no exceptions". Of course, under the further terms of the policy, this statement was embodied in the policy and supposedly relied upon by the company.

The facts leading up to the issuance of the policy are substantially as follows: The defendant, Lawrence Bettinger, hereinafter called Lawrence, was, at the time of the purchase, 17 years of age and lived at home with his parents at Hastings, Minnesota. He was employed as a farm hand and the nature of that work required his traveling from farm to farm[1] and sometimes living away from home.

The automobile involved herein was purchased from the Hastings Motor Company through a salesman named Aase, on August 11, 1951. While the facts leading up to the closing of the deal are very much in dispute, it seems obvious that Lawrence did the selecting, but that Marie, his mother, made the down payment, signed the transfer card and had the title card transferred to her. The transactions up to this point are little different from the usual case where a sale is made to a minor. The distinguishing features, however, are that Marie made the down payment[2] and arranged through Aase for the insurance coverage.

This was a conditional sale and the Hastings Motor Company, as usual in sales of this type, arranged for insurance coverage through its regular agency, named Sontag. It is apparent that Marie was not familiar with business transactions of this nature and that she relied on the advice of salesman Aase.[3] In this particular instance Aase phoned the agency and gave it the necessary information for the issuance of the policy. Aase knew the Bettinger family and was aware that Lawrence would be the sole driver, but apparently the agent of the insurance company asked only whether Marie was over 25, and whether somebody under the age of 25 would be driving the automobile. The answer to both of these questions was in the affirmative and appeared to satisfy the insurance agent, who wrote the policy in favor of Marie Bettinger as owner.[4]

The undisputed evidence shows that seven days after the purchase of the automobile Marie transferred the registration card to Lawrence and that he filed an application with the Secretary of State as owner of the automobile. The avowed purpose of these transactions, according to defendants' testimony, was to place the automobile beyond the reach of creditors of Marie's husband.[5] These transfers were apparently advised in by salesman Aase, as the evidence shows he was the notary.

Other evidence in this case clearly shows that Lawrence was at all times the sole driver of the car, and it seems certain that he had more or less complete possession and control of it.

On October 22, 1951, plaintiffs sent a cancellation notice to Marie, effective as of October 27, 1951. The accident, from which intervenors sustained injuries and

---

1. While the farm hands provided their own transportation, Lawrence testified that the only day he drove was the day of the accident.

2. Lawrence testified he contributed nothing towards the down payment, although he admitted contributing to the support of the family.

3. It is not contended, nor could it be supported, that Aase was the agent of the plaintiffs. Mooney v. Jones, Minn.1952, 54 N.W.2d 763.

4. Plaintiffs claim this lack of information was in effect a misrepresentation as they could not write a policy covering a minor. See Government Employees Ins. Co. v. Powell, 2 Cir., 1947, 160 F.2d 89, 91, wherein the Court held failure to disclose was neither a misrepresentation nor a concealment of a material fact.

5. As argued by plaintiffs' counsel, it would have been more logical if the attempt had been to avoid Marie's creditors, for it is obvious, as counsel states, that the husband's creditors could not attach the wife's property.

commenced actions in this Court, occurred on October 26, 1951.[6]

It is extremely important to note here that the plaintiffs, after due notice of these suits, rejected their defense on the theories as already outlined. However, they did commence promptly this separate action for declaratory judgment and made a timely motion for early trial based on the fact that the personal injury actions were pending, which motion was denied. Subsequently, the personal injury actions came on for trial and resulted in directed verdicts in favor of the intervenors. The sole issue submitted to the jury was that of damages.

The foregoing facts present two questions for determination:

(1) Are the plaintiffs now estopped from litigating the issue of ownership as of the time of the accident?

(2) Did Marie have an insurable interest at the time of the accident?

Claiming estoppel, intervenors contend that issue was litigated and decided by the judgments rendered because Marie's liability was based on ownership of the car.[7]

After considering the arguments of respective counsel, the Court is satisfied that the doctrine of res judicata does not apply to the instant case.[8] In the light of the well-established concepts of the doctrine [9], can it be said that the plaintiffs had a fair opportunity to litigate the issue of ownership, or that such ownership was actually

6. The evidence shows Lawrence was driving the automobile, returning from work, at the time of the accident.

7. Section 170.54, Minnesota Statutes Annotated, reads as follows:
"Driver deemed agent of owner
"Whenever any motor vehicle, after Laws 1945, Chapter 285, becomes effective, shall be operated upon any public street or highway of this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

8. Plaintiffs rely on Preferred Accident Ins. Co. of New York v. Grasso, 2 Cir., 1951, 186 F.2d 987, 23 A.L.R.2d 1234, and Shelby Mutual Casualty Co. of Shelby, Ohio, v. Richmond, 2 Cir., 185 F.2d 803. The Preferred case is not in point because it appears the earlier case never resulted in a judgment. The Shelby case is not in point either because there the insurance company defended under a reservation of rights.
Intervenors-defendants rely exclusively on the Minnesota case of Olson v. Schultz, 67 Minn. 494, 70 N.W. 779, 36 L.R.A. 790. Their argument is to the effect that this decision is controlling and in line with the majority view that where a person is responsible over, is duly notified and given opportunity to defend, he is bound by the resulting judgment whether or not he elected to defend. However, in that case the issue of the defective condition of the elevator was litigated.
Intervenors-defendants also rely on Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co. v. Crapet, 5 Cir., 1952, 199 F.2d 850, 854, but that case may be distinguished in that the court submitted interrogatories to the jury and the reviewing court refused to pass on "whether the jury's verdict is contrary to the weight of the evidence."

9. United States v. Munsingwear, Inc., 8 Cir., 1949, 178 F.2d 204, 208, citing and quoting from Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898, wherein the Supreme Court said:
"It is first necessary to understand something of the recognized meaning and scope of res judicata, a doctrine judicial in origin. The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' * * *
" 'But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.'
* * * *"

litigated? The Court is mindful that the question is not whether the insurer was liable under the circumstances, but whether it was in fact an insurer.[10]

It is not open to question that the plaintiffs took all the necessary and reasonable steps they could under the circumstances when they brought their action for declaratory judgment and moved for an early trial. Furthermore, what success could they have hoped for had they conducted the personal injury trials under a reservation of rights? Is it reasonable to suppose that Marie's testimony would be favorable to plaintiffs? Third parties cannot be called upon to defend an action where their showing themselves not to be liable will not necessarily result in a judgment in favor of a party asking them to defend.[11]

Examination of the record in the prior trials does not disclose the basis for the Court's granting the motion for a directed verdict. That being true, it cannot be said that it was sustained by the Court on any particular ground. Hence the question of ownership is left at large.[12]

For the reasons above stated the Court is of the opinion that res judicata is not applicable to the instant case. We come, therefore, to consideration of the decisive issue in this case, namely whether Marie had any insurable interest in the automobile at the time of the accident.

Considering first the question of ownership at the time of the issuance of the policy and bearing in mind that insurance policies are construed in favor of the insured,[13] sufficient evidence was introduced to sustain the initial presumption of ownership in Marie at the time the policy was issued.[14] While it is true, as counsel for plaintiffs contend, that payment of a purchase price alone does not establish ownership,[15] there is other evidence sufficient to sustain this conclusion.[16]

The fact that the insurance agent was not informed that Lawrence would be the sole driver did not constitute any misrepresentation. As stated in Government Employees Ins. Co. v. Powell, supra; 160 F.2d 89, mere failure to disclose is neither a misrepresentation nor a concealment of a material fact.[17]

Therefore, considering all of the evidence up to this point, the Court is of the opinion that Marie was the sole owner of the automobile at the time the policy was issued and that the policy was valid.

Considering next, however, the question of Marie's insurable interest at the

10. Builders & Manufacturers Mutual Casualty Co. v. Paquette, D.C.Me.1938, 21 F.Supp. 858, 865.

11. Farm Bureau Mutual Automobile Ins. Co. v. Hammer, 4 Cir., 1949, 177 F.2d 793; certiorari denied Beverage v. Farm Bureau Mutual Automobile Ins. Co., 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339.

12. Whitney v. Employers' Indemnity Corporation, 1925, 200 Iowa 25, 202 N.W. 236, 237, 41 A.L.R. 495; O'Neil v. Rueb, 1943, 215 Minn. 296, 10 N.W.2d 363, 364, in which it was said:
"Plaintiff may avoid an 'estoppel by judgment' by showing that a particular matter involved in the prior litigation was distinctly withdrawn, abandoned, ruled out, or withheld from consideration of jury so that it constituted no part of verdict or judgment rendered thereon."

13. Hawkeye Casualty Co. v. Western Underwriter's Ass'n, Inc., D.C.Idaho 1944. 53 F.Supp. 256, 262.

14. It is well settled in Minnesota that the registration of a motor vehicle is only prima facie evidence, and not conclusive evidence, of ownership. The leading case is Flaugh v. Egan Chevrolet, Inc., 202 Minn. 615, 279 N.W. 582.

15. State v. One Oldsmobile Two-Door Sedan, 227 Minn. 280, 35 N.W.2d 525; State v. One Buick Sedan Automobile, 216 Minn. 129, 12 N.W.2d 1.

16. There is evidence showing that Marie made the down payment, signed the necessary papers, received the registration card and made the arrangements for insurance, including payment of the premium.

17. It is certainly significant that the insurance agent asked only whether the owner was over 25, and whether someone under 25 would be driving the automobile.

time of the accident, a different situation is present. Here the prima facie evidence favors the plaintiffs as the registration card was in Lawrence's name and there is, in addition, the presumption of a gift from mother to son.[18] The burden of proof, therefore, has shifted to the defendants-intervenors to rebut these presumptions.[19]

■ The only evidence offered by defendants-intervenors to rebut these presumptions was testimony by Marie and Lawrence, both interested parties in the case. The evidence of these parties was so impeached by prior and inconsistent testimony and admissions that its weight was considerably affected. In view of these facts, as above stated, and the additional proof which was offered by plaintiffs, the Court is of the opinion that the defendants-intervenors have failed to sustain their burden of proof to rebut the prima facie case established by plaintiffs.

■ The Court is of the opinion, therefore, that Marie had no insurable interest in the automobile at the time of the accident and that the insurance companies here have no obligation to pay any damages resulting from this accident nor to defend any subsequent actions for the Bettingers.

This is an unfortunate case, to say the least. The Bettingers were inexperienced and no doubt depended upon the vendor of the automobile to attend to the matter of insurance. The Court is sympathetic with their cause, and while "legal niceties should not obscure the plain equities of the situation",[20] applicable rules of law must prevail over the desire of the defendants and intervenors to be made whole at the expense of plaintiffs.

Plaintiffs may submit findings of fact, conclusions of law, order for and form of judgment in conformity with the foregoing, and upon proper notice to defendants-intervenors.

Defendants-intervenors are allowed an exception.

---

18. State v. One Oldsmobile Two-Door Sedan, supra, 227 Minn. 280, 35 N.W.2d 525, wherein the court said that where there is a transfer of property to a wife, child or other natural object of bounty and the purchase price is paid by the transferor, there is a presumption of a gift. Counsel for defendants-intervenors in their arguments on the elements of a gift failed to reconcile this case.

19. Preferred Accident Ins. Co. of New York v. Grasso, supra, 186 F.2d 987, 990. Counsel for defendants-intervenors in their arguments against this case, failed to distinguish between the burden of proof, and the burden of going ahead after a prima facie case has been established.

20. J. Nordbye in Preferred Accident Ins Co. of New York v. Onali, D.C., 43 F. Supp. 227, 232.