T.C. Memo. 2003-209

UNITED STATES TAX COURT

CURTIS R. AND LYNN BITKER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JERRY D. AND COLEEN A. BITKER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 7321-00, 7334-00.          Filed July 15, 2003.

Jon J. Jensen and Alexander F. Reichert, for petitioners.

Blaine Holiday, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and accuracy-related penalties under section 6662(a) for 1996 and 1997 as follows:[1]

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and Rule
(continued...)

|                      |            | Penalty      |
| Docket No./Year      | Deficiency | Sec. 6662(a) |
| -------------------- | ---------- | ------------ |
| Docket No. 7321-00   |            |              |
| 1996                 | $186,324   | $37,264.80   |
| 1997                 | 53,547     | 10,709.40    |
| Docket No. 7334-00   |            |              |
| 1996                 | 235,290    | 47,058.00    |
| 1997                 | 59,632     | 11,926.40    |

The issues to be decided[2] are:

1. Whether payments by Ray Bitker & Sons partnership (the Bitker partnership) on petitioners' debts should be characterized (for tax purposes) as rental expenses of the Bitker partnership or constructive partnership distributions to petitioners;

2. whether petitioners received distributions from the Bitker partnership in 1996 and 1997 that exceeded their bases in the Bitker partnership; and

3. whether petitioners are liable for accuracy-related penalties under section 6662(a) for the years at issue.

---

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure.

[2]     Other adjustments that respondent made to petitioners' 1996 and 1997 returns are computational; the resolution with respect to these adjustments depends on our determination of the issues for decision.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

A. Petitioners and the Bitker Partnership

Curtis Bitker and Lynn Bitker are husband and wife. Jerry Bitker and Coleen Bitker are husband and wife. Curtis Bitker and Jerry Bitker (petitioner husbands) are brothers. All petitioners resided in Minnesota when the petitions in these cases were filed.

Petitioner husbands were raised on a farm in Norman County, Minnesota, owned by their father, Ray Bitker. Petitioner husbands and their father formed the Bitker partnership on January 1, 1979. Each owned a one-third interest in the Bitker partnership. The Bitker partnership's principal business is farming; however, it does not own any of the land that is farmed.

In 1989, petitioner husbands acquired their father's interest in the Bitker partnership at no cost; each then held a one-half interest in the partnership. Although their father was no longer a partner in the Bitker partnership, the partnership continued to farm his land and pay him rent for the use thereof.

In 1991, Lynn Bitker and Coleen Bitker (petitioner wives) each obtained a 20-percent interest in the Bitker partnership at no cost. Since 1991, each petitioner husband has held a 30-percent

interest in the Bitker partnership, and each petitioner wife has held a 20-percent interest.

During the years at issue, petitioner husbands conducted all of their farming activity through the Bitker partnership. Jerry Bitker is responsible for the day-to-day bookkeeping of the Bitker partnership's income and expenses.

Some of the farm crops were processed and sold through several cooperatives. Only active farm operators could purchase shares (and thus become members) of these cooperatives. In most instances, shares of stock in the cooperatives were issued to petitioner husbands (as opposed to the Bitker partnership). Nonetheless, petitioners accounted for their shares of the cooperatives' income through the Bitker partnership.

B.   The Bitker Partnership's Forms 1065

Earl Mostoller, a certified public accountant, is a member of Drees, Riskey & Vallager, Ltd., an accounting firm that has prepared the Bitker partnership tax returns since its formation. Mr. Mostoller has prepared petitioners' Forms 1040, U.S. Individual Income Tax Return, and the Bitker partnership's Forms 1065, U.S. Partnership Return of Income, since 1985. Jerry Bitker provided Mr. Mostoller with information as to the Bitker partnership's income and expenses, as well as loan records from the Farm Credit Service. Loans made for partnership purposes were made in petitioners' names rather than in the name of the Bitker

partnership. All four petitioners are personally liable for the Bitker partnership's debts.

Mr. Mostoller prepared and maintained a depreciation schedule showing the historical cost of equipment, less depreciation taken each year. He verified loan balances by calling the Farm Credit Service. Mr. Mostoller calculated the Bitker partnership's capital by subtracting the loan balances from the total adjusted cost bases of partnership assets (cost basis less depreciation). Mr. Mostoller determined the partners' capital contributions and distributions by taking each partner's beginning capital account, adding thereto (or subtracting therefrom) the partner's distributive share of the Bitker partnership's net income (or net loss) for the year, and subtracting the partner's ending capital account--the difference being the amount of the distribution to, or the amount of the contribution by, the partner to the Bitker partnership for the particular year.

On Schedules K-1 attached to Forms 1065 filed by the Bitker partnership for years prior to 1991, the amounts for "Partner's share of liabilities" and "Analysis of partner's capital account" were left blank. Schedules K-1 attached to the Forms 1065 filed by the Bitker partnership for years 1991-97 (the 1991-97 Schedules K-1) reflect that each petitioner husband owned 30 percent of its capital and that each was entitled to 30 percent of its profits and losses. The 1991-97 Schedules K-1 reflect that each petitioner

wife owned 20 percent of the capital of the Bitker partnership and that each was entitled to 20 percent of its profits and losses. The 1991-97 Schedules K-1 also reflect each "Partner's share of liabilities" and "Analysis of partner's capital account" as follows (discrepancies attributable to rounding):

|  | Curtis | Jerry | Lynn | Coleen | Total |
|---|---|---|---|---|---|
| **1991** |  |  |  |  |  |
| Partner's share of liabilities | $557,991 | $557,991 | $371,994 | $371,994 | $1,859,970 |
| Analysis of partner's capital account: |  |  |  |  |  |
| Capital account at beginning of year | (519,852) | (519,852) | -0- | -0- | (1,039,704) |
| Capital contributed during year | 117,284 | 117,284 | -0- | -0- | 234,568 |
| Partner's share of net book income (loss) | 19,149 | 19,149 | 12,766 | 12,766 | 63,830 |
| Withdrawals and distributions | -0- | -0- | (268,377) | (268,377) | (536,754) |
| Capital account at end of year | (383,418) | (383,418) | (255,611) | (255,611) | (1,278,058) |
| **1992** |  |  |  |  |  |
| Partner's share of liabilities | 629,863 | 629,863 | 419,909 | 419,909 | 2,099,544 |
| Analysis of partner's capital account: |  |  |  |  |  |
| Capital account at beginning of year | (383,417) | (383,417) | (255,612) | (255,612) | (1,278,058) |
| Capital contributed during year | -0- | -0- | -0- | -0- | -0- |
| Partner's share of net book income (loss) | 11,246 | 11,246 | 7,497 | 7,497 | 37,486 |
| Withdrawals and distributions | (67,126) | (67,126) | (44,751) | (44,751) | (223,754) |
| Capital account at end of year | (439,297) | (439,297) | (292,866) | (292,866) | (1,464,326) |
| **1993** |  |  |  |  |  |
| Partner's share of liabilities | 457,122 | 457,122 | 304,749 | 304,749 | 1,523,742 |
| Analysis of partner's capital account: |  |  |  |  |  |
| Capital account at beginning of year | (439,296) | (439,296) | (292,866) | (292,866) | (1,464,324) |
| Capital contributed during year | 88,159 | 88,159 | 58,773 | 58,773 | 293,864 |
| Partner's share of net book income (loss) | 24,201 | 24,201 | 16,134 | 16,134 | 80,670 |
| Withdrawals and distributions | -0- | -0- | -0- | -0- | -0- |
| Capital account at end of year | (326,936) | (326,936) | (217,959) | (217,959) | (1,089,790) |
| **1994** |  |  |  |  |  |
| Partner's share of liabilities | 691,441 | 691,442 | 460,961 | 460,961 | 2,304,805 |
| Analysis of partner's capital account: |  |  |  |  |  |
| Capital account at beginning of year | (326,296) | (326,936) | (217,959) | (217,960) | (1,089,151) |
| Capital contributed during year | -0- | -0- | -0- | -0- | -0- |

| | | | | | |
|---|---:|---:|---:|---:|---:|
| Partner's share of net book income (loss) | 69,265 | 69,265 | 46,177 | 46,177 | 230,884 |
| Withdrawals and distributions | (255,431) | (255,431) | (170,287) | (170,287) | (851,436) |
| Capital account at end of year | (512,462) | (513,106) | (342,070) | (342,071) | (1,709,709) |

1995

| | | | | | |
|---|---:|---:|---:|---:|---:|
| Partner's share of liabilities[1] | 593,699 | 593,698 | 395,799 | 395,799 | 1,978,995 |
| Analysis of partner's capital account: | | | | | |
| Capital account at beginning of year | (513,102) | (513,102) | (342,070) | (342,071) | (1,710,345) |
| Capital contributed during year | 20,240 | 20,240 | 13,494 | 13,494 | 67,468 |
| Partner's share of net book income (loss) | (75,354) | (75,355) | (50,236) | (50,236) | (251,181) |
| Withdrawals and distributions | -0- | -0- | -0- | -0- | -0- |
| Capital account at end of year | (568,216) | (568,217) | (378,812) | (378,813) | (1,894,058) |

1996

| | | | | | |
|---|---:|---:|---:|---:|---:|
| Partner's share of liabilities[1] | 554,358 | 554,357 | 369,571 | 369,571 | 1,847,857 |
| Analysis of partner's capital account: | | | | | |
| Capital account at beginning of year | (568,216) | (568,217) | (378,812) | (378,813) | (1,894,058) |
| Capital contributed during year | -0- | -0- | -0- | -0- | -0- |
| Partner's share of net book income (loss) | 58,559 | 58,559 | 39,039 | 39,039 | 195,196 |
| Withdrawals and distributions | (209,266) | (209,266) | (139,511) | (139,510) | (697,553) |
| Capital account at end of year | (718,923) | (718,924) | (479,284) | (479,284) | (2,396,415) |

1997

| | | | | | |
|---|---:|---:|---:|---:|---:|
| Partner's share of liabilities[1] | 551,278 | 551,278 | 367,518 | 367,518 | 1,837,592 |
| Analysis of partner's capital account: | | | | | |
| Capital account at beginning of year | (718,923) | (718,924) | (479,284) | (479,284) | (2,396,415) |
| Capital contributed during year | -0- | -0- | -0- | -0- | -0- |
| Partner's share of net book income (loss) | 45,089 | 45,087 | 30,059 | 30,059 | 150,294 |
| Withdrawals and distributions | (4,673) | (4,673) | (3,116) | (3,116) | (15,578) |
| Capital account at end of year | (678,507) | (678,510) | (452,341) | (452,341) | (2,261,699) |

[1] The partners' shares of liabilities reflect only shares of long-term debt as shown on the balance sheets on the Bitker partnership's returns.

None of the Bitker partnership's Forms 1065 for years before 1992 showed balance sheets. The balance sheets reported on the 1992-97 Forms 1065 show assets, liabilities, and partners' capital at yearend for 1991-97 as follows (discrepancies attributable to rounding):

| | 1991 | 1992 | 1993 | 1994 |
|---|---|---|---|---|
| Assets: | | | | |
| Cash | $70,073 | $23,230 | $22,089 | $4,000 |
| Other current assets | 154,635 | 99,990 | 57,730 | 144,000 |
| Buildings & other depreciable assets | 1,389,587 | 1,625,901 | 1,466,600 | 1,678,611 |
| Less accumulated depreciation | (1,032,382) | (1,113,910) | (1,112,469) | (1,232,151) |
| Total assets | 581,913 | 635,220 | 433,950 | 594,460 |
| Liabilities & capital: | | | | |
| Short-term mortgages, notes, bonds | 1,859,971 | 2,099,544 | 1,523,741 | 692,861 |
| Long-term mortgages, notes, bonds | -0- | -0- | -0- | 1,611,944 |
| Partners' capital accounts | (1,278,058) | (1,464,324) | (1,089,791) | (1,710,345) |
| Total liabilities & capital | 581,913 | 635,220 | 433,950 | 594,460 |

| | 1995 | 1996 | 1997 |
|---|---|---|---|
| Assets: | | | |
| Cash | 128,593 | 85,057 | 29,964 |
| Other current assets | 533,485 | 137,815 | 102,530 |
| Buildings & other depreciable assets | 1,661,845 | 1,635,270 | 1,930,251 |
| Less accumulated depreciation | (1,299,147) | (1,367,442) | (1,453,207) |
| Total assets | 1,024,776 | 490,700 | 609,538 |
| Liabilities & capital: | | | |
| Short-term mortgages, notes, bonds | 939,839 | 1,039,258 | 1,033,645 |
| Long-term mortgages, notes, bonds | 1,978,995 | 1,847,857 | 1,837,592 |
| Partners' capital accounts | (1,894,058) | (2,396,415) | (2,261,699) |
| Total liabilities & capital | 1,024,776 | 490,700 | 609,538 |

Of the $939,839 of short-term debt and $1,978,995 of long-term debt reported on the 1995 Form 1065, $205,263 of short-term debt and $756,759 of long-term debt were owed by petitioners in their individual capacities.

On the 1996 Form 1065, the Bitker partnership reported ordinary income of $132,754 that was attributable to its farming activity. On the 1996 Schedule F, Profit or Loss From Farming, the Bitker partnership reported $2,116,506 of gross income and $1,983,752 of expenses. The expenses included, inter alia, $236,390 for rent or lease of land, animals, etc., $92,811 for depreciation, and $223,411 for interest.

On the 1997 Form 1065, the Bitker partnership reported ordinary income of $150,255 that was attributable to its farming activity. On the 1997 Schedule F, the Bitker partnership reported $2,223,960 of gross income and $2,073,705 total expenses, which expenses included, inter alia, $141,072 for rent or lease of land, animals, etc., $85,267 for depreciation, and $211,622 for interest.

Each year on their Forms 1040, petitioners reported the income reflected on their Schedules K-1 from the Bitker partnership. On their 1996 Forms 1040, in addition to the income from the Bitker partnership, petitioners reported other income from rental real estate on Schedules E. On their 1996 Form 1040, Curtis and Lynn Bitker reported $80,000 of rental income from farmland in Polk County, Minnesota. On their 1996 Form 1040, Jerry and Coleen

Bitker reported $80,000 of rental income from two parcels of farmland in Norman County, Minnesota. Petitioners did not report any income from rental real estate on their 1997 Forms 1040.

C.    The Notices of Deficiency

In September 1998, an agent of respondent began an examination of the Bitker partnership's 1996 and 1997 Forms 1065 and petitioners' 1996 and 1997 Forms 1040. Mr. Mostoller represented both the Bitker partnership and petitioners during the examination.

The agent requested that petitioners extend the period for assessment of tax for 1996 and 1997. They declined to do so. As a consequence, petitioners did not have an opportunity to have the proposed changes for 1996 and 1997 reviewed by the Appeals Office of the Internal Revenue Service.

The agent calculated that, as of December 31, 1995, the partners had negative capital accounts totaling $1,144,343 and the Bitker partnership had short-term debt of $734,576 and long-term debt of $1,222,236. The agent determined that (1) for 1996 the Bitker partnership had a profit of $334,263, interest income of $12, and a short-term capital gain of $50,234 and (2) for 1997 it had a profit of $260,411 and interest income of $39. The agent also determined that the following amounts constituted personal expenses of petitioners and that the Bitker partnership's payment of the expenses constituted distributions by the partnership to the partners (discrepancies attributable to rounding):

|  | Curtis | Jerry | Lynn | Coleen | Total |
|---|---|---|---|---|---|
| **1996** | | | | | |
| Payments on land | $121,347 | $121,347 | -0- | -0- | $242,694 |
| Repairs | 2,723 | 2,723 | $1,816 | $1,816 | 9,078 |
| Supplies | 102 | 102 | 68 | 68 | 340 |
| Depreciation | 296 | 296 | 197 | 197 | 986 |
| Utilities | 734 | 734 | 490 | 490 | 2,448 |
| Medical insurance | 1,780 | 1,780 | 1,187 | 1,187 | 5,934 |
| Total | 126,982 | 126,982 | 3,758 | 3,758 | 261,480 |
| **1997** | | | | | |
| Payments on land | 64,494 | 64,494 | -0- | -0- | 128,988 |
| Repairs | 212 | 212 | 141 | 141 | 706 |
| Supplies | 407 | 407 | 271 | 271 | 1,356 |
| Depreciation | 277 | 277 | 184 | 184 | 922 |
| Utilities | 708 | 708 | 472 | 472 | 2,360 |
| Medical insurance | 1,304 | 1,304 | 870 | 870 | 4,348 |
| Total | 67,402 | 67,402 | 1,938 | 1,938 | 138,680 |

The agent reclassified the depreciation, as well as the interest paid by the Bitker partnership on petitioners' personal mortgages on their farmland (the mortgages are on land that the partnership farms), as rental expenses on petitioners' Schedules E.

Respondent issued notices of deficiency to petitioners for 1996 and 1997. The statements of changes attached to the notices reflect the following adjustments:

|  | 12/31/96 | 12/31/97 |
|---|---|---|
| Curtis & Lynn Bitker | | |
| Capital gain or loss | $473,015 | $89,312 |
| Exemptions | 14,076 | 1,590 |
| Itemized deductions | -- | 2,171 |
| K-1 Ray Bitker & Sons (C) | 60,453 | 33,046 |
| K-1 Ray Bitker & Sons (L) | 40,302 | 22,031 |
| Schedule E rental expense | (101,453) | (25,000) |
| Schedule F Curtis | (947) | 45,387 |
| Schedule F Lynn | (2,645) | -- |
| SE AGI adjustment | 221 | (5,332) |
| Self-employ health | (1,762) | (1,619) |
| Total adjustments | 481,260 | 161,586 |

| Jerry & Coleen Bitker | 12/31/96 | 12/31/97 |
|---|---|---|
| Capital gain or loss | $473,015 | $89,312 |
| Exemptions | 5,100 | 1,060 |
| Itemized deductions | 6,770 | 2,535 |
| K-1 Ray Bitker & Sons (C) | 40,302 | 22,031 |
| K-1 Ray Bitker & Sons (J) | 60,453 | 33,047 |
| Schedule E rental | (101,597) | (25,000) |
| Schedule F Coleen | (1,032) | – |
| Schedule F Jerry | 36,545 | 33,770 |
| SE AGI adjustment | (2,542) | (4,511) |
| Self-employ health | (2,241) | (1,953) |
| Standard deduction | (6,700) | – |
| Total adjustments | 508,073 | 150,291 |

The explanations attached to the notices of deficiency state that the income from the Bitker partnership should be increased and "We have adjusted your return in accordance with the partnership return, which has also been examined."[3] The adjustments to Schedules F were explained as "Expenses were deducted on Schedule F that were attributable to the rental activity. These expenses are allowed on Schedule E." The adjustments to the Schedule E rental expenses were determined to be "Rental expenses, which you deducted elsewhere, are allowed as rental expenses. Losses are limited due to passive loss rules."

The explanations attached to the notices of deficiency state that adjustments were made with respect to capital gain or loss because "Amounts distributed by partnership, which are in excess of

---

[3] The examination report showing adjustments resulting from the examination of the Bitker partnership returns was not attached to the notices of deficiency. The notices of deficiency do not otherwise show or explain the adjustments made to the partnership returns.

the partners' bases, have resulted in a capital gain.  See Exhibit 3 to show you how we figured the gain."  Exhibit 3 computes the gain as follows:

|  | 12/31/96 | 12/31/97 |
|---|---|---|
| Curtis & Lynn Bitker |  |  |
| Short-term capital gain or loss | $506,139 | $87,801 |
| Short-term capital loss carryover | -0- | -0- |
| Net short-term capital gain or | 506,139 | 87,801 |
|  |  |  |
| Long-term capital gain or loss | 7,378 | 6,238 |
| Long-term capital loss carryover | -0- | -0- |
| Net long-term gain or loss | 7,378 | 6,238 |
|  |  |  |
| Net capital gain or loss | 513,517 | 94,039 |
| Capital loss limitation | -0- | -0- |
| Capital gain or loss as corrected | 513,517 | 94,039 |
| Capital gain or loss per return | 40,501 | 4,727 |
| Adjustment to income | 473,015 | 89,312 |
|  |  |  |
| Jerry & Coleen Bitker |  |  |
| Short-term capital gain or loss | 504,634 | 89,312 |
| Short-term capital loss carryover | -0- | -0- |
| Net short-term capital gain or | 504,634 | 89,312 |
|  |  |  |
| Long-term capital gain or loss | 9,634 | 10,521 |
| Long-term capital loss carryover | -0- | -0- |
| Net long-term gain or loss | 9,634 | 10,521 |
|  |  |  |
| Net capital gain or loss | 514,268 | 99,833 |
| Capital loss limitation | -0- | -0- |
| Capital gain or loss as corrected | 514,268 | 99,833 |
| Capital gain or loss per return | 41,253 | 10,521 |
| Adjustment to income | 473,015 | 89,312 |

OPINION

I.   Burden of Proof: Rule 142(a); Sections 7522 and 7491

As a general rule, the Commissioner's determinations in a notice of deficiency are presumed correct, and the burden is on the taxpayer to prove otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, this rule does not apply for new matters raised by the Commissioner after the issuance of the notice of deficiency.  Rule 142(a).  In addition, under certain circumstances, the burden of proof or production is on the Commissioner.  See secs. 7522, 7491.[4]

A.   Section 7522

Section 7522 requires a notice of deficiency to "describe the basis" for the tax deficiency.  In some situations, this Court has held that failure to describe the basis for the tax deficiency in the notice of deficiency is analogous to the raising of a new matter under Rule 142(a).  Shea v. Commissioner, 112 T.C. 183, 197 (1999); Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989); Estate of Ballantyne v. Commissioner, T.C. Memo. 2002-160. In this regard, we stated that a new matter is raised when the basis or theory upon which the Commissioner relies is not stated or

_____

[4]   Sec. 7491 applies to court proceedings arising in connection with examinations beginning after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726.  In this case, the examination of petitioners' returns began after July 22, 1998. Accordingly, sec. 7491 is applicable to this case.

described in the notice of deficiency and the new theory or basis requires the presentation of different evidence. <u>Wayne Bolt & Nut Co. v. Commissioner</u>, <u>supra</u> at 507. In such a situation, the burden of proof is placed on the Commissioner with respect to that issue. <u>Id.</u>

The adjustments to petitioners' income were made primarily on the basis of adjustments to the income reported on Bitker partnership tax returns for 1996 and 1997. Knowledge of the specific adjustments to the income of Bitker partnership for the years at issue is necessary to resolve the correctness of respondent's determinations.

Petitioners assert that, because the notices of deficiency did not include a copy of the examination report for the Bitker partnership or otherwise specify the adjustments to its income, respondent did not adequately describe the basis for, or explain, the adjustments in the notices of deficiency. Petitioners conclude, therefore, that the burden is on respondent pursuant to section 7522 and Rule 142(a).

We agree that it would have been helpful if respondent either had attached a copy of the examination report showing the adjustments to partnership income to the notices of deficiency or had included the computations and adjustments from the Bitker partnership in the explanations of the adjustments. See, e.g., <u>Brodsky v. Commissioner</u>, T.C. Memo. 2001-240 (each notice of

deficiency included schedules that listed for each of the years at issue the Commissioner's position regarding the sources of the deposits into the taxpayer's accounts during each year and the total amount of the deposits during each year from each source). But we do not find respondent's failure to do so in this case constitutes the raising of new matter.

The purpose of section 7522 is to give the taxpayer notice of the Commissioner's basis for determining a deficiency. Shea v. Commissioner, supra at 196. In the situation before us, Mr. Mostoller represented petitioners during the examination of their returns, as well as the examination of the Bitker partnership returns, and he had a copy of the examination report related to the partnership returns. The notices of deficiency, in conjunction with the partnership examination report to which petitioners had access through Mr. Mostoller, gave petitioners sufficient notice of respondent's basis for determining the deficiencies. Under these circumstances, we are satisfied that the notices of deficiency sufficiently described the basis of the deficiencies within the meaning of section 7522.

B. Section 7491

1. Penalties

Under section 7491(c), the Commissioner has the burden of production with respect to an individual's liability for any penalty. Respondent acknowledges having the burden of production

with respect to the accuracy-related penalties under section 6662(a).

##### 2.  Factual Issues

Pursuant to the general rule of section 7491(a)(1), if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability for income tax, the Commissioner bears the burden of proof with respect to that issue.  The preceding rule applies, however, only if the taxpayer has: (1) Complied with requirements under the Internal Revenue Code to substantiate any item; (2) maintained all records required by the Internal Revenue Code; and (3) cooperated with reasonable requests by the Secretary for information, documents, and meetings.  Sec. 7491(a)(2).  Taxpayers bear the burden of proving that these requirements have been met.  Snyder v. Commissioner, T.C. Memo. 2001-255 (citing H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).

Respondent contends that the burden of proof remains on petitioners with respect to all factual issues in this case because petitioners failed to comply with the substantiation requirements, failed to maintain all records required by the Internal Revenue Code, and failed to cooperate with reasonable requests for information and documents.

In this case, there are multiple factual issues relevant to determining petitioners' tax liabilities. We will define those

factual issues  and apply section 7491(a) to each on the basis of the circumstances involved.

II.  Factual Issues in This Case

Respondent determined deficiencies in petitioners' Federal income taxes and self-employment taxes.  The adjustments to petitioners' income resulted from adjustments made to the income of the Bitker partnership as reported on its tax returns for 1996 and 1997 and from a determination that it made distributions to the partners.

For purposes of Federal income tax liability, a partnership is not taxed at the entity level.  Sec. 701.  Instead, the partnership's income is passed through to its partners, and each partner is individually taxed on his/her distributive share of partnership income.  Secs. 701-704, 761(a).

An individual's self-employment income is subject to a self-employment tax in addition to Federal income tax.  Sec. 1401. Subject to exclusions not relevant to this case, self-employment income means net earnings from self-employment. Sec. 1402(b).  Net earnings from self-employment include, inter alia, an individual's distributive share, whether or not distributed, of income or loss (as described in section 702(a)(8)) from any trade or business carried on by a partnership in which the individual is a partner. Sec. 1402(a).

A. <u>Whether Payments Made by the Bitker Partnership on Indebtedness Owed by Petitioners Are Rental Expenses of the Bitker Partnership or Constructive Distributions to Petitioners From the Bitker Partnership</u>

The Bitker partnership claimed a deduction for interest it paid on mortgages against petitioners' farmland. Respondent disallowed the deduction. That disallowance resulted in increases in petitioners' distributive shares of partnership farming income, which is reported on Schedule F.

Respondent determined that the interest on the mortgages represented petitioners' individual expenses (as opposed to partnership expenses) reportable as rental expenses on Schedule E of petitioners' returns and that the deductibility of that interest is subject to the passive loss rules of section 469. Those adjustments resulted in increases in petitioners' self-employment tax. The parties agree that the interest payments totaled $242,964 in 1996 and $128,988 in 1997 and that petitioner husbands each constructively received half of each year's payment. Moreover, petitioners concede the reclassification of the claimed Schedule F interest expenses on the Bitker partnership's returns as Schedule E rental expenses on petitioners' returns; further, they acknowledge that the losses from their rental real estate activity are subject to the passive loss limitations of section 469. Petitioners contend, however, that the principal and interest paid by the Bitker partnership should be treated as payments by it for use of petitioners' land. In effect, petitioners are asserting

that the payments are rental income to petitioners and an additional rental expense of the Bitker partnership.

Payments a partner receives from a partnership generally fall into one of three categories. First, a partner may receive payments representing distributions of his/her distributive share of partnership income. See sec. 731. Second, a partner may receive payments in circumstances where he/she is not treated as a partner. Sec. 707(a). And third, a partner may receive guaranteed payments for services or use of capital that do not represent distributions of partnership income. Sec. 707(c).

Payments made to a partner either in his capacity other than as a partner under section 707(a) or as guaranteed payments under section 707(c) must satisfy the requirements of section 162(a) before such payments may be deducted by the partnership. Cagle v. Commissioner, 63 T.C. 86, 91, 95 (1974) (no deduction is allowed if the payment by the partnership to a partner constitutes a capital expenditure), affd. 539 F.2d 409 (5th Cir. 1976).

Section 1.707-1(a), Income Tax Regs., provides in part:

> Where a partner retains the ownership of property but allows the partnership to use such separately owned property for partnership purposes (for example, to obtain credit or to secure firm creditors by guaranty, pledge, or other agreement), the transaction is treated as one between partnership and a partner not acting in his capacity as a partner.

Here, petitioners retained ownership of their farmland but allowed the Bitker partnership to use the land in connection with

its farming activity. Pursuant to section 707(a), this type of transaction is treated as one between the Bitker partnership and petitioners acting other than in their capacity as partners. Consequently, payments made to petitioners by the Bitker partnership for use of the farmland could constitute ordinary and necessary rental expenses incurred in the conduct of its trade or business that are deductible under section 162.

Petitioners maintain that the Bitker partnership's payments of principal and interest on petitioners' land mortgages should be treated as payments of land rent. Petitioners, however, have offered no evidence, testimonial or otherwise, that (a) the Bitker partnership made the payments as rent for such use or (b) the payments represented fair rental value. Moreover, the record is silent as to the number of acres used by the Bitker partnership. Simply stated, petitioners have failed to provide any information or substantiation that would permit us to estimate the allowable deductions as permitted under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Since petitioners have failed to provide evidence on the factual issue as to the amount of rent, if any, paid by the Bitker partnership for use of the land, section 7491(a) does not place the burden of proof on respondent with respect to this issue.

Accordingly, in computing petitioners' tax liabilities, (1) petitioners' shares of income from the Bitker partnership will not

be reduced for rent of the farmland, (2) petitioners' income from their rental real estate activity will not be increased for such rent, and (3) petitioners' distributions from the Bitker partnership will include the partnership's payments of petitioners' personal debt.

B.   Whether Distributions Petitioners Received From the Bitker Partnership in 1996 and 1997 Exceeded Their Bases in Their Partnership Interests

Section 731(a) sets forth the circumstances under which a partner recognizes gain or loss from partnership distributions. In the case of a distribution by a partnership to a partner, gain is recognized only to the extent that the money (including marketable securities) distributed exceeds the adjusted basis of a partner's interest in the partnership immediately before the distribution. Sec. 731(a)(1); Jacobson v. Commissioner, 96 T.C. 577, 584 (1991), affd. 963 F.2d 218 (8th Cir. 1992).  Any gain recognized under section 731(a) is considered gain from the sale or exchange of the partnership interest of the distributee partner.  Sec. 731(a); P.D.B. Sports, Ltd. v. Commissioner, 109 T.C. 423, 441 (1997).  In the case of a sale or exchange of an interest in a partnership, gain recognized to the transferor partner is generally treated as gain from the sale or exchange of a capital asset.  Sec. 741; Colonnade Condo., Inc. v. Commissioner, 91 T.C. 793, 814 (1988).

Section 705(a) states a general rule for determining the adjusted basis of a partner's interest.  In relevant part, section

705(a) provides that the adjusted basis of a partner's interest in a partnership is the basis as determined under section 722[5] (relating to contributions to a partnership) or section 742[6] (relating to transfers of partnership interests) (1) <u>increased</u> by the partner's distributive share of partnership income for the current and prior years and (2) <u>decreased</u> (but not below zero) by the amount of distributions from the partnership under section 733[7] and by the partner's distributive share of partnership losses for the current and prior years.

---

[5] Sec. 722 provides that the basis of a partnership interest acquired by contribution of property, including money, is "the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution". For purposes of sec. 722, a contribution of money includes: "Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities". Sec. 752(a).

[6] Sec. 742 provides: "The basis of an interest in a partnership acquired other than by contribution shall be determined under part II of subchapter O (sec. 1011 and following)." In general, the basis of property acquired by gift is the same as it was in the hands of the donor. Sec. 1015. For purposes of determining loss, however, if that basis is greater than the fair market value of the property at the time of the gift, then the basis is the fair market value at the time of the gift. <u>Id.</u>

[7] In the case of a distribution by a partnership to a partner other than in liquidation of a partner's interest, the adjusted basis of the partner is reduced by the amount of money distributed to that partner. Sec. 733. Additionally, any decrease in a partner's share of the liabilities of a partnership is considered a distribution of money to the partner by the partnership. Sec. 752(b).

Section 705(b) grants the Secretary the authority to prescribe regulations under which the adjusted basis of a partner's interest in a partnership may be determined by reference to the partner's proportionate share of the adjusted basis of partnership property upon a termination of the partnership. The regulations promulgated to implement this section (found in section 1.705-1(b), Income Tax Regs.) provide that an alternative method (the alternative rule) may be used in circumstances where (a) a partner cannot practicably apply the general rule set forth in section 705(a) and section 1.705-1(a), Income Tax Regs., or (b) from a consideration of all the facts, the Commissioner reasonably concludes that the result will not vary substantially from the result obtainable under the general rule. Sec. 1.705-1(b), Income Tax Regs. Where the alternative rule is used, certain adjustments may be necessary to reflect discrepancies arising as a result of contributed property, transfers of partnership interests, or distributions of property to the partners. Id. Petitioners maintain that their bases should be determined under the alternative rule.

Respondent asserts that petitioner wives' bases in their partnership interests can be determined under the general rule of section 705(a) from their Schedules K-1 for 1991-97. On the other hand, petitioners maintain that petitioner wives' bases should be determined under the alternative rule. Respondent posits that, since petitioner wives neither paid their husbands for the

interests nor contributed any property to the Bitker partnership, the bases of their partnership interests are equal to their respective shares of partnership debt. We disagree.

The 20-percent interests that petitioner wives acquired in 1991 included 20-percent interests in the Bitker partnership's existing capital--property interests that had been owned by their husbands at the time the wives became partners. Under Minnesota law, a presumption exists that money or property transferred by a husband to his wife (or a parent to his/her child) is a gift. State v. One Oldsmobile Two-Door Sedan, 35 N.W.2d 525 (Minn. 1948); Stahn v. Stahn, 256 N.W. 137 (Minn. 1934); Jenning v. Rohde, 109 N.W. 597 (Minn. 1906); Kiecker v. Estate of Kiecker, 404 N.W.2d 881 (Minn. Ct. App. 1987); see also Matarese v. Commissioner, T.C. Memo. 1975-184.

Here, the facts show that petitioner wives paid nothing for their respective 20-percent interests in the Bitker partnership. We conclude, therefore, that petitioner wives acquired their interests in the Bitker partnership as gifts from their husbands. Consequently, pursuant to section 1015(a), for purposes of determining gain, the basis of each wife's 20-percent interest was two-fifths of her husband's basis in his partnership interest. This conclusion is supported by the fact that the Schedules K-1 for 1991 reflect that petitioner wives each held a 20-percent interest for the entire year and that petitioner wives were each treated as

partners of the Bitker partnership for the entire year. Moreover, petitioner wives each reported (on their respective individual income tax returns) 20 percent of the partnership income and deductions for 1991. The 1991 Schedules K-1 do not accurately reflect the partners' capital accounts--the beginning year negative capital accounts shown on petitioner husbands' Schedules K-1 reflect their 50-percent interests before gifts to their wives, not their 30-percent interests following the gifts. Moreover, the reported contributions from petitioner husbands to the Bitker partnership, as well as the distributions to petitioner wives were erroneous--the numbers used were "plugged in" in by Mr. Mostoller to account for the changes in ownership. Mr. Mostoller's approach to reporting the partners' capital accounts, contributions, and distributions for 1991 was not correct. The partners' capital accounts for 1991 are more accurately reflected as follows:

|  | Curtis | Jerry | Lynn | Coleen | Total |
|---|---|---|---|---|---|
| **1991** | | | | | |
| Analysis of partner's capital account | | | | | |
| Capital account at beginning of year | ($311,911) | ($311,911) | ($207,941) | ($207,941) | ($1,039,704) |
| Capital contributed during year | | | | | |
| Partner's share of net book income (loss) | 19,149 | 19,149 | 12,766 | 12,766 | 63,830 |
| Distributions | (90,656) | (90,656) | (60,436) | (60,436) | (302,184) |
| Capital account at end of year | (383,418) | (383,418) | (255,611) | (255,611) | (1,278,058) |
| Partner's share of liabilities | 557,991 | 557,991 | 371,994 | 371,994 | 1,859,970 |

Respondent argues on brief that, pursuant to the principle known as duty of consistency, petitioners are bound as to the amounts of the capital accounts and distributions reported on the 1991 return. We disagree.

A taxpayer is under a duty of consistency when:

(1) the taxpayer has made a representation or reported an item for tax purposes in one year,

(2) the Commissioner has acquiesced in or relied on that fact for that year, and

(3) the taxpayer desires to change the representation, previously made, in a later year after the statute of limitations on assessments bars adjustments for the initial tax year. * * * [Beltzer v. United States, 495 F.2d 211, 212 (8th Cir. 1974).]

The duty of consistency is an affirmative defense that should be raised in pleadings before trial. Sec. 7453; Rule 39; LeFever v. Commissioner, 100 F.3d 778 (10th Cir. 1996), affg. 103 T.C. 525 (1994). In the instant case, respondent's answer contained no affirmative defenses or any allegation that respondent has relied upon the capital accounts and distributions reported on the 1991 Schedules K-1. Consequently, because the duty of consistency is an affirmative defense and was not pleaded by respondent, nor tried by consent of the parties, it is deemed waived. Rule 39; Monahan v. Commissioner, 109 T.C. 235, 250 (1997); Green v. Commissioner, T.C. Memo. 1998-274 (collateral estoppel), affd. without published opinion 201 F.3d 447 (10th Cir. 1999); see also Gustafson v. Commissioner, 97 T.C. 85, 89-92 (1991) (if an affirmative defense

is not pleaded, it is deemed waived). We conclude therefore that petitioners are not bound by the duty of consistency to the capital accounts and distributions reported on the 1991 tax return.

The Bitker partnership was formed in 1979. The records of the partnership do not show the amounts of cash contributions or the bases in property contributed by petitioner husbands and their father, Ray Bitker, to the partnership when it was formed. Moreover, a calculation of the distributions made to each partner each year since its formation cannot be made. The partnership tax returns in the record cover only the years 1984-97. Only the tax returns for 1992-97 show balance sheets. Under these circumstances, it is appropriate to apply the alternative rule set forth in section 1.705-1(b), Income Tax Regs., in order to establish petitioners' adjusted bases in their partnership interests.

Regardless of where the burden of proof may lie, the preponderance of the evidence establishes that the distributions petitioners received in 1996 and 1997 did not exceed their bases in their partnership interests.

The parties agree that the Bitker partnership had the following assets and liabilities as of December 31, 1995-97:

|                                | 12/31/95  | 12/31/96  | 12/31/97  |
|--------------------------------|-----------|-----------|-----------|
| Assets:                        |           |           |           |
| Cash                           | $128,593  | $85,057   | $29,964   |
| Adjusted basis of buildings and|           |           |           |
|    other depreciable assets | 362,698   | 267,828   | 477,044   |
| Basis of other assets          |           |           |           |
|   Farm Services stock| 134,345   | 137,815   | 102,530   |
|   Unit Retains       | 186,834   | 172,934   | 151,696   |
|   USWP stock         | --        | --        | 68,333    |
|  Total assets             | 812,470   | 663,634   | 829,567   |
| Liabilities:                   |           |           |           |
| Short-term debt                | 734,576   | 988,477   | 1,189,635 |
| Long-term debt                 | 1,222,236 | 1,069,820 | 1,232,633 |
|  Total liabilities        | 1,956,812 | 2,058,297 | 2,422,268 |

On the basis of the Bitker partnership's assets and liabilities as of the beginning and end of each year at issue (as agreed to by respondent) and its income (as adjusted during the examination of the partnership return), the cash distribution to petitioners (including the deemed distribution for payment of petitioners' personal expenses) is $634,830 for 1996 and $458,488 for 1997. The amounts of the distributions to petitioners are computed as follows:

|                                | 12/31/95  | 12/31/96  | 12/31/97  |
|--------------------------------|-----------|-----------|-----------|
| Assets:                        |           |           |           |
| Cash                           | $128,593  | $85,057   | $29,964   |
| Adjusted basis of buildings and|           |           |           |
|    other depreciable assets | 362,698   | 267,828   | 477,044   |
| Basis of other assets          |           |           |           |
|   Farm Services stock| 134,345   | 137,815   | 102,530   |
|   Unit Retains       | 186,834   | 172,934   | 151,696   |
|   USWP stock         | --        | --        | 68,333    |
|  Total assets             | 812,470   | 663,634   | 829,567   |
| Liabilities:                   |           |           |           |
| Short-term debt                | 734,576   | 988,477   | 1,189,635 |
| Long-term debt                 | 1,222,236 | 1,069,820 | 1,232,633 |
|  Total liabilities        | 1,956,812 | 2,058,297 | 2,422,268 |

| Partners' capital | (1,144,342) | (1,394,663) | (1,592,701) |
| Analysis of partners' capital: | | | |
| Net income per books | | 384,509 | 260,450 |
| Distributions | | (634,830) | (458,488) |
| Balance at year end | | (1,394,663) | (1,592,701) |
| Beginning year balance | | (1,144,342) | (1,394,663) |

In order for the distributions to have exceeded $634,830 for 1996 and $458,488 for 1997, the Bitker partnership would have had to have depleted its assets, incurred additional debt, or earned more income.

Under the alternative computation, a partner's basis is equal to the partner's proportionate share of the adjusted basis of partnership property upon a termination of the partnership.[8]  That basis may equal his/her negative capital account plus his/her share of partnership liabilities.  Long v. Commissioner, 77 T.C. 1045, 1084 (1981) (basis equaled negative capital account plus taxpayer's

---

[8]  Section 705(a) sets forth the general rule for determining a partner's basis in his partnership interest.  Any increase or decrease in a partner's share of partnership liabilities is deemed either a cash contribution by the partner to the partnership or a distribution to the partner by the partnership. Sec. 752(a) and (b).  The partner's basis in his/her partnership interest is increased by the amount of the deemed contribution or reduced by the deemed distribution.

This is not true as to the partner's capital account, however.  The capital account generally reflects a partner's equity investment in the partnership and is not increased by his/her share of partnership liabilities.  Tapper v. Commissioner, T.C. Memo. 1986-597.  Thus, it is possible for partners, like petitioners in this case, to have negative capital accounts while maintaining positive tax bases in their partnership interest.

Unlike a partner's basis, which can never be less than zero, a partner's capital account will be negative if the sum of the capital contributions credited to him on the partnership's books and his share of "book" profits is less than the sum of the amounts distributed to him and his share of "book" losses.

share of partnership liabilities); see also <u>Tapper v. Commissioner</u>, T.C. Memo. 1986-597; cf. <u>Coleman v. Commissioner</u>, T.C. Memo. 1974-78 (Court refused to apply alternative computation because taxpayer failed to provide proof of partnership's asset basis), affd. 540 F.2d 427 (9th Cir. 1976).  The computation may require adjustments to reflect "any significant discrepancies arising as a result of contributed property, transfers of partnership interest, or distributions of property to partners."  Sec. 1.705-1(b), Income Tax Regs.

The record contains no evidence that any contributions were entered on the Bitker partnership's books at other than their tax bases.  Nor does the record reflect any differences between the financial and tax accounting treatment of partnership income or expense items or partnership losses (before the year in issue) that were not previously deductible by reason of section 704(d). Nor is an adjustment required for Ray Bitker's transfer of his interest in the Bitker partnership to petitioner husbands in 1989 or for petitioner husbands' transfers to petitioner wives in 1991 because all of those transfers were gifts.  (The respective bases of petitioners are determined using transferred bases for the interests received by gifts. Secs. 742, 1015(a); cf. <u>Tapper v. Commissioner</u>, <u>supra</u> (adjustment required to reflect retirement of former partner's interest in prior year).)

On the basis of the Bitker partnership's assets and liabilities as of the beginning and end of each year at issue as agreed to by respondent, its income as adjusted during the examination of the partnership return, and the cash distributions to petitioners of $634,830 for 1996 and $458,488 for 1997, which necessarily included the deemed distribution for payment of petitioners' personal expenses, we conclude that the distributions did not exceed petitioners' bases in their partnership interests. The computations we have used in reaching this conclusion are as follows:

| 1996 | Total[1] | Curtis (30%) | Jerry (30%) | Lynn (20%) | Coleen (20%) |
|---|---|---|---|---|---|
| Assets at beginning of year: | | | | | |
| Cash | $128,593 | $38,578 | $38,578 | $25,719 | $25,719 |
| Adjusted basis of buildings and | | | | | |
|   other depreciable assets | 362,698 | 108,809 | 108,809 | 72,540 | 72,540 |
| Basis of other assets: | | | | | |
|  Farm Services stock | 134,345 | 40,304 | 40,304 | 26,869 | 26,869 |
|  Unit Retains | 186,834 | 56,050 | 56,050 | 37,367 | 37,367 |
|   USWP stock | -- | -- | -- | -- | -- |
|  Total assets | 812,470 | 243,741 | 243,741 | 162,495 | 162,495 |
| Liabilities at beginning of year: | | | | | |
|  Short-term debt | 734,576 | 220,373 | 220,373 | 146,915 | 146,915 |
|  Long-term debt | 1,222,236 | 366,671 | 366,671 | 244,447 | 244,447 |
|   Total liabilities | 1,956,812 | 587,044 | 587,044 | 391,362 | 391,362 |
| Partners' capital at beginning of year | (1,144,342) | (343,303) | (343,303) | (228,867) | (228,867) |
| Change in liabilities: | | | | | |
|  Liabilities at beginning of year | 1,956,812 | 587,044 | 587,044 | 391,362 | 391,362 |
|  Liabilities at year end | 2,058,297 | 617,489 | 617,489 | 411,659 | 411,659 |
|   Increase (decrease) | 101,485 | 30,445 | 30,445 | 20,297 | 20,297 |
| Partners' bases at beginning of year | 812,470 | 243,741 | 243,741 | 162,495 | 162,495 |
| 1996 Income (as adjusted) | 384,509 | 115,353 | 115,353 | 76,902 | 76,902 |
| Contributions: | | | | | |
|  Cash/property | -0- | -0- | -0- | -0- | -0- |
|  Deemed by increase in liabilities | 101,485 | 30,445 | 30,445 | 20,297 | 20,297 |
| Partners' bases before distributions | 1,298,464 | 389,539 | 389,539 | 259,694 | 259,694 |
| Distributions: | | | | | |
|  Cash | (634,830) | (190,449) | (190,449) | (126,966) | (126,966) |
|  Deemed by reduction in liabilities | -0- | -0- | -0- | -0- | -0- |
| Partners' bases after distributions | 663,634 | 199,090 | 199,090 | 132,728 | 132,728 |

[1] Differences due to rounding.

| 1997 | Total[1] | Curtis (30%) | Jerry (30%) | Lynn (20%) | Coleen (20%) |
|---|---|---|---|---|---|
| Assets at beginning year: | | | | | |
| Cash | $85,057 | $25,517 | $25,517 | $17,011 | $17,011 |
| Adjusted basis of buildings and | | | | | |
|   other depreciable assets | 267,828 | 80,348 | 80,348 | 53,566 | 53,566 |
| Basis of other assets: | | | | | |
|   Farm Services stock | 137,815 | 41,345 | 41,345 | 27,563 | 27,563 |
|   Unit Retains | 172,934 | 51,880 | 51,880 | 34,587 | 34,587 |
|   USWP stock | -- | -- | -- | -- | -- |
|   Total assets | 663,634 | 199,090 | 199,090 | 132,727 | 132,727 |
| Liabilities: | | | | | |
| Short-term debt | 988,477 | 296,543 | 296,543 | 197,695 | 197,695 |
| Long-term debt | 1,069,820 | 320,946 | 320,946 | 213,964 | 213,964 |
|   Total liabilities | 2,058,297 | 617,489 | 617,489 | 411,659 | 411,659 |
| Partners' capital at beginning of year | (1,394,663) | (418,399) | (418,399) | (278,933) | (278,933) |
| Change in liabilities: | | | | | |
|   Liabilities at beginning of year | 2,058,297 | 617,489 | 617,489 | 411,659 | 411,659 |
|   Liabilities at year end | 2,422,268 | 726,680 | 726,680 | 484,454 | 484,454 |
|    Increase (decrease) | 363,971 | 109,191 | 109,191 | 72,795 | 72,795 |
| Partners' bases at beginning of year | 663,634 | 199,090 | 199,090 | 132,728 | 132,728 |
| 1997 Income (as adjusted) | 260,450 | 78,135 | 78,135 | 52,090 | 52,090 |
| Contributions: | | | | | |
| Cash/property | -0- | -0- | -0- | -0- | -0- |
| Deemed by increase in liabilities | 363,971 | 109,191 | 109,191 | 72,795 | 72,795 |
| Partners' bases before distributions | 1,288,058 | 386,416 | 386,416 | 257,613 | 257,613 |
| Distributions: | | | | | |
| Cash | (458,488) | (137,546) | (137,546) | (91,698) | (91,698) |
| Deemed by reduction in liabilities | -0- | -0- | -0- | -0- | -0- |
| Partners' bases after distributions | 829,570 | 248,870 | 248,870 | 165,915 | 165,915 |

[1] Differences due to rounding.

Respondent argues that because petitioners erroneously treated $962,022 of personal debt as the Bitker partnership's liabilities, the adjustment that was made to remove the $962,022 of liabilities from the partnership's balance sheet should be treated as a distribution under section 752(b). We disagree.

When a partnership assumes an individual partner's liabilities, the assumption of those liabilities results in a deemed distribution to the partner of the amount assumed by the partners. Sec. 752(b). Conversely, when a partner assumes the partnership's liabilities, the assumption of such liability results in a deemed contribution by the partner to the partnership of the amount assumed. Sec. 752(a). Additionally, any increase or decrease in a partner's share of partnership liabilities is deemed either a cash contribution by the partner to the partnership or a distribution to the partner by the partnership. Sec. 752(a) and (b). The partner's basis in his/her partnership interest is increased by the amount of the deemed contribution or reduced by the deemed distribution. Secs. 705, 722, 733; <u>Barron v. Commissioner</u>, T.C. Memo. 1992-598; <u>Moore v. Commissioner</u>, T.C. Memo. 1987-499.

Section 1.752-1(f), Income Tax Regs., provides:

(f) <u>Netting of increases and decreases in liabilities resulting from same transaction</u>. If, as a result of a single transaction, a partner incurs both an increase in the partner's share of the partnership liabilities (or the partner's individual liabilities) and a decrease in the partner's share of the partnership liabilities (or

the partner's individual liabilities), only the net decrease is treated as a distribution from the partnership and only the net increase is treated as a contribution of money to the partnership.

Section 1.752-1(g), Income Tax Regs., provides the following example of the effect of netting:

Example 1. Property contributed subject to a liability; netting of increase and decrease in partner's share of liability. B contributes property with an adjusted basis of $1,000 to a general partnership in exchange for a one-third interest in the partnership. At the time of the contribution, the partnership does not have any liabilities outstanding and the property is subject to a recourse debt of $150 and has a fair market value in excess of $150. After the contribution, B remains personally liable to the creditor and none of the other partners bears any of the economic risk of loss for the liability under state law or otherwise. Under paragraph (e) of this section, the partnership is treated as having assumed the $150 liability. As a result, B's individual liabilities decrease by $150. At the same time, however, B's share of liabilities of the partnership increases by $150. Only the net increase or decrease in B's share of the liabilities of the partnership and B's individual liabilities is taken into account in applying section 752. Because there is no net change, B is not treated as having contributed money to the partnership or as having received a distribution of money from the partnership under paragraph (b) or (c) of this section. Therefore B's basis for B's partnership interest is $1,000 (B's basis for the contributed property).

Petitioners were at all times personally liable for the debts erroneously included as partnership liabilities. Netting results in a complete offset (i.e., no change) for the deemed contributions and distributions when petitioners' personal liabilities are assumed by the Bitker partnership and when the liabilities are removed from the partnership. In essence, the total distributions

to petitioners in 1996 are unaffected by the adjustment to the amount of partnership liabilities.

Since we conclude that petitioners had sufficient bases taking into account only the assets and liabilities agreed to by the parties, we need not decide other arguments made by petitioners regarding this issue.

C.    Whether Petitioners Are Liable for The Accuracy-Related Penalties Under Section 6662(a) for The Years at Issue.

Respondent contends that petitioners are liable for an accuracy-related penalty under section 6662(a).  Respondent has the burden of production under section 7491(c) and must come forward with evidence sufficient for us to sustain the section 6662(a) penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001); Emerson v. Commissioner, T.C. Memo. 2003-82.

As pertinent here, section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to negligence or disregard of rules or regulations, sec. 6662(b)(1), or a substantial understatement of tax, sec. 6662(b)(2). Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to keep adequate books and records or to substantiate items properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  An "understatement" is the excess of the amount of tax required to be shown in the tax return over the amount of tax shown

in the tax return, sec. 6662(d)(2)(A), and is "substantial" in the case of an individual if the understatement exceeds the greater of 10 percent of the tax required to be shown or $5,000, sec. 6662(d)(1)(A).

The penalty under section 6662(a) does not apply to any portion of an understatement of tax if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his/her proper tax liability for the year. Id.

Reasonable cause requires that the taxpayer exercise ordinary business care and prudence as to the disputed item. United States v. Boyle, 469 U.S. 241 (1985); see also Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 98 (2000), affd. 299 F.3d 221 (3d Cir. 2002). The good faith reliance on the advice of an independent, competent professional as to the tax treatment of an item may meet this requirement. United States v. Boyle, supra; sec. 1.6664-4(b), Income Tax Regs. Whether a taxpayer reasonably relies on advice of a professional depends on the facts and circumstances of the case and the law applicable thereto. Sec.

1.6664-4(c)(1)(i), Income Tax Regs.  The taxpayer must prove that:
(1) The adviser was a competent professional who had sufficient
expertise to justify reliance, (2) the taxpayer provided necessary
and accurate information to the adviser, and (3) the taxpayer
actually relied in good faith on the adviser's judgment.  Ellwest
Stereo Theatres, Inc. v. Commissioner, T.C. Memo. 1995-610; see
also Rule 142(a)(1).  To show good faith reliance, the taxpayer
must show that the return preparer was supplied with all the
necessary information and the incorrect return was a result of the
preparer's mistakes.  Pessin v. Commissioner, 59 T.C. 473, 489
(1972); sec. 1.6664-4(c)(1)(i), Income Tax Regs.

In this case, the understatement of tax is attributable to the
disallowance of the Bitker partnership's deduction of interest on
petitioners' individual debt on the farmland they owned.  We do not
believe that petitioners reasonably relied on Mr. Mostoller with
respect to this disallowance.  The farmland was not shown as an
asset of the Bitker partnership on the partnership return prepared
by Mr. Mostoller.  Consequently, we believe Mr. Mostoller knew that
the Bitker partnership did not own any farmland.

Mr. Mostoller verified loan balances by calling Farm Credit
Services.  Petitioners have failed to establish, however, that they
furnished Mr. Mostoller with necessary and relevant information to
identify any of the loans as mortgages on their individually owned
farmland.  Moreover, petitioners have failed to show that the

incorrect treatment of the interest paid on those mortgages was due to Mr. Mostoller's mistakes.  Accordingly, we hold that petitioners are liable for the section 6662(a) accuracy-related penalty with regard to the increases in income tax and self-employment tax resulting from the disallowance of the deduction claimed by the Bitker partnership for interest on petitioners' debt.

To reflect the foregoing and concessions by the parties,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.