T.C. Summary Opinion 2019-12

UNITED STATES TAX COURT

STEVEN AUSTIN SMITH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12354-17S.                    Filed July 1, 2019.

Steven Austin Smith, pro se.

<u>Huiwen A. Xi</u>, <u>Jamie A. Schindler</u>, and <u>John T. Arthur</u>, for respondent.

SUMMARY OPINION

VASQUEZ, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code (Code) in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]All section references are to the Code in effect for the year in issue, and all
(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $7,756 in petitioner's 2014 Federal income tax and a section 6662(a) accuracy-related penalty of $1,551.20. The issues for decision are: (1) whether petitioner's exporting business was an active trade or business for the 2014 tax year; (2) if so, whether petitioner is entitled to deduct on a Schedule C, Profit or Loss From Business, travel expenses of $18,377, meal and entertainment expenses of $2,790, and other expenses of $6,535; and (3) whether petitioner is liable for the section 6662(a) accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. We incorporate the stipulation of facts and the attached exhibits by this reference. When the petition was timely filed, petitioner resided in Florida.

I.    Petitioner's Background

In 1985 petitioner earned a bachelor's degree in chemical engineering from Rutgers University. After a brief stint with Proctor & Gamble, petitioner began working for PepsiCo. Petitioner started as a packaging engineer but later became

---

[1](...continued)
Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

a senior project manager for PepsiCo's international division, focusing primarily on international beverage sales. While working for PepsiCo, petitioner enrolled in a doctoral program at Rutgers University, where he earned an M.B.A. and a Ph.D. in strategy and international business.

Since earning his Ph.D. in 1997, petitioner has worked as a full-time professor of management at various universities. In 2014 petitioner was a tenure-track professor at Southern Connecticut State University. He was also an adjunct professor in the executive M.B.A. program at Florida Atlantic University.

## II.   Vegan Worldwide

Petitioner is also a vegan[2] and an entrepreneur. In 2012, while teaching in Brazil through an exchange program, petitioner had a difficult time obtaining vegan food. The following year petitioner created Vegan Worldwide, LLC (Worldwide), a Delaware limited liability company, which he formed to export vegan food and beverage products for sale and distribution in foreign markets. In the middle of 2013 petitioner completed his business plan for Worldwide.

In January 2014 Worldwide entered into a private label reseller agreement with Taft Foodmasters, LLC (Taft), under which Taft granted Worldwide an exclusive license to sell certain Taft products in Brazil, Argentina, Colombia,

---

[2]Vegans do not consume animal products; their diet is plant based.

Jamaica, and the Dominican Republic. Taft produced a product called Seitan, a wheat-based meat substitute, which Worldwide marketed under its own label. Worldwide also had an agreement in 2014 with Butler Foods, LLC (Butler), a domestic food manufacturer from which Worldwide purchased and marketed a product called Soy Curls. Petitioner negotiated with several other domestic food manufacturers in 2014 but did not finalize any agreements with them.

During the year in issue petitioner traveled to Colombia, Brazil, Jamaica, and the Dominican Republic, where he attended food shows and other meetings to market Worldwide's products to local distributors and retailers. Petitioner also used a network of foreign business associates to market Worldwide's products in their countries and seek out potential customers. When he identified potential customers, petitioner sent them samples of his products.

Although petitioner secured an oral commitment from a hotel group in Colombia to purchase Soy Curls in 2014, an actual deal did not materialize. In fact Worldwide did not make any sales in 2014. Vegans represent a small (albeit growing) percentage of the population in Worldwide's target countries. Thus, retailers were hesitant to clear shelf space for Worldwide's products. Nonetheless, Worldwide remains in business, having secured a Colombian distributor for Soy Curls after the year in issue.

III.   Tax Return and Notice of Deficiency

Petitioner timely filed his 2014 income tax return, on which he reported wage income of $166,424.  Petitioner's return includes a Schedule C for Worldwide reporting a loss of $39,423.  On the Schedule C petitioner reported gross receipts or sales of $2,125[3] and the following expenses:

| Item | Amount |
| --- | --- |
| Advertising | $4,402 |
| Legal and professional services | 4,485 |
| Office expenses | 2,013 |
| Supplies | 1,538 |
| Travel | 18,377 |
| Meals and entertainment | 2,790 |
| Utilities | 1,408 |
| Other expenses[1] | 6,535 |

[1]This category consists of deductions of $889 for subscriptions and memberships, $301 for service charges, $60 for education, $12 for bank fees, $1,408 for cell phone expenses, $750 for food exports, $3,000 for a wire transfer to a Colombian entity called Invima, $15 for wire fees, and $100 for a "Verizon fee".

Respondent selected petitioner's 2014 return for examination and timely issued a notice of deficiency.  Respondent attached to the notice of deficiency

[3]The parties agree that Worldwide did not generate any revenue from the export of its products in 2013 or 2014.  At trial petitioner could not recall the source of the reported gross receipts.

copies of Form 4549, Income Tax Examination Changes, and Form 886-A, Explanation of Items. The Form 4549 reveals that the deficiency arises from respondent's disallowance of petitioner's Schedule C deductions for travel expenses, meals and entertainment, and "other expenses". Respondent also determined that petitioner was liable for a section 6662(a) and (b)(2) accuracy-related penalty for a substantial understatement of income tax. The parties stipulated that the penalty "was automatically calculated through electronic means when petitioner did not respond during [the] correspondence exam."

The only meaningful explanation for respondent's disallowance of the deductions at issue appears on the Form 886-A and reads as follows:

> We disallowed the amount shown on your return because we did not receive an answer to our request for supporting information. To be allowed a deduction, expense, exemption, credit, or other tax benefit, you must establish that you have met all requirements of the law. If you furnish the necessary information, we will be glad to reconsider the proposed adjustment.

Petitioner timely petitioned this Court, and a trial was held in Miami, Florida.

## Discussion

### I. Burden of Proof

Respondent argues that petitioner is not entitled to the deductions at issue on his 2014 return because the underlying expenditures were startup expenses under section 195. Respondent also contends that petitioner failed to substantiate the expenses at issue.

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing that the determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, when the Commissioner relies on a basis or theory at trial which was not stated or described in the notice of deficiency and the new basis or theory requires the presentation of different evidence, the Commissioner has raised a "new matter", and the burden of proof falls on him with respect to that new matter. Rule 142(a); Shea v. Commissioner, 112 T.C. 183, 197 (1999); Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989). In determining whether the Commissioner has given a taxpayer sufficient notice of his basis for determining a deficiency, we examine a notice of deficiency in conjunction with documents provided to a taxpayer or his representative during the examination of the taxpayer's return. Bitker v. Commissioner, T.C. Memo. 2003-209.

A.    Startup Expenditures

Amounts paid or incurred in connection with creating an active trade or business are startup expenditures.  See sec. 195(c).  Section 195(a) generally precludes taxpayers from deducting startup expenditures.[4]

In the matter before us, respondent's notice of deficiency makes no mention of section 195, the text of section 195, or the principles upon which section 195 rests.  The record does not establish that respondent raised section 195 during the examination of petitioner's income tax return or otherwise notified petitioner that section 195 was relevant to his determination.  In fact, respondent's allowance of petitioner's Schedule C deductions for advertising, legal and professional services, office expenses, supplies, and utilities in the notice of deficiency contradicts respondent's section 195 argument.  Accordingly, respondent's section 195 argument is a new matter, and respondent bears the burden of proof with respect to that argument.[5]  See Rule 142(a); Shea v. Commissioner, 112 T.C. at 197.

---

[4]However, under sec. 195(b), taxpayers may elect to deduct for the taxable year in which the active trade or business begins up to $5,000 of startup expenditures, reduced by the amount by which those expenditures exceed $50,000. The remainder is allowable as a deduction ratably over the 180-month period beginning with the month in which the active trade or business begins.  Sec. 195(b).

[5]Respondent first raised the sec. 195 issue in his pretrial memorandum, and

(continued...)

B.    Substantiation

Taxpayers must maintain records sufficient to enable the Commissioner to determine their correct tax liability.  Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001); sec. 1.6001-1(a), Income Tax Regs.  Taxpayers must "keep such permanent books of account or records * * * as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information."  Sec. 1.6001-1(a), Income Tax Regs.

The notice of deficiency in this matter, combined with information on the attached Form 4549 and Form 886-A, adequately reveals that respondent disallowed petitioner's Schedule C deductions because of petitioner's failure to substantiate the underlying expenses.  The Form 886-A states that respondent disallowed the Schedule C expense amounts shown on petitioner's 2014 return because petitioner failed to provide respondent with "supporting information".  See supra p. 6.  The Form 886-A also states that petitioner "must establish that * * * [his claimed deductions have] met all requirements of the law."  This substantially corresponds with the text and principles of section 6001 and the

---

[5](...continued)
petitioner did not object.  Accordingly, we find that the issue was tried by consent. See Rule 41(b).

regulations issued thereunder. Petitioner therefore bears the burden of proof with respect to substantiating his claimed business deductions.[6] See Rule 142(a).

## II. Schedule C Deductions

### A. Startup Expenditures

We first address whether Worldwide's expenses were nondeductible startup expenditures during the year in issue.

Taxpayers may neither deduct nor amortize startup expenditures if the activities to which the expenditures relate fail to become an "active trade or business". See sec. 195(a), (c). Congress, through section 195(c)(2)(A), authorized the Secretary to issue regulations to guide the determination of when an active trade or business begins. No such regulations have yet been issued.

In determining when an activity becomes an "active trade or business" for the purpose of section 195(a), this Court has sought guidance from cases interpreting the "engaged in a trade or business" requirement for deduction under section 162. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); see Yapp v.

---

[6]Sec. 7491(a) provides that if, in any Court proceeding, "a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B" and meets other prerequisites, the Commissioner shall have the burden of proof with respect to that issue. Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). However, petitioner has neither claimed nor shown that he satisfied the requirements of sec. 7491(a) to shift the burden of proof to respondent.

Commissioner, T.C. Memo. 2018-147, at *14; Weaver v. Commissioner, T.C. Memo. 2004-108. For the purpose of section 162, the U.S. Supreme Court has held that the question of whether a taxpayer is "engaged in a trade or business" requires examination of the facts in each particular case. Commissioner v. Groetzinger, 480 U.S. at 36. To be engaged in a trade or business, a taxpayer must: (1) undertake an activity intending to make a profit, (2) be regularly and actively involved in the activity, and (3) actually have commenced business operations. McManus v. Commissioner, T.C. Memo. 1987-457, aff'd without published opinion, 865 F.2d 255 (4th Cir. 1988). Respondent does not dispute that petitioner satisfied the first and second of these requirements but contends that Worldwide did not commence business operations in 2014.

A taxpayer is not engaged in a trade or business "until such time as the business has begun to function as a going concern and performed those activities for which it was organized." Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 68 (1965). An enterprise need not have generated sales or other revenue to have begun to carry on a business. Cabintaxi Corp. v. Commissioner, 63 F.3d 614, 620 (7th Cir. 1995), aff'g in part, rev'g in part, and remanding T.C. Memo. 1994-316; Jackson v. Commissioner, 864 F.2d 1521, 1526 (10th Cir. 1989), aff'g 86 T.C. 492

(1986). However, mere research into or investigation of a potential business is insufficient to demonstrate that a taxpayer is engaged in a trade or business. Dean v. Commissioner, 56 T.C. 895, 902-903 (1971).

The record in this case establishes that petitioner, through Worldwide, was actively engaged in the trade or business of selling vegan products in Colombia, Brazil, Jamaica, and the Dominican Republic during 2014. In 2013 petitioner completed his business plan for Worldwide, according to which he would purchase vegan products from domestic manufacturers and sell them for a profit in certain foreign countries. During 2014 petitioner had an agreement with Butler, which permitted Worldwide to sell and market Butler's Soy Curls product in foreign countries. Worldwide also received an exclusive license from Taft to sell Seitan products in Brazil, Argentina, Colombia, Jamaica, and the Dominican Republic in the beginning of 2014.

Having secured products to sell, petitioner actively marketed those products in several foreign countries through his own efforts and those of business associates. Petitioner credibly testified that he attended food shows and other meetings in Colombia, Brazil, Jamaica, and the Dominican Republic, where he provided samples of Worldwide's products to local distributors and retailers. Petitioner also credibly testified that he used a network of foreign business

associates to market Worldwide's products and find potential customers. The record in this case includes emails that corroborate petitioner's extensive efforts to sell Worldwide's products.

Respondent, who bears the burden of proof on this issue, has not persuaded us that Worldwide did not have the capability to export vegan products in 2014 or that petitioner's activities for Worldwide amounted to mere research into a potential business. Accordingly, Worldwide's expenditures for 2014 are not subject to the limitations of section 195.

B.     Substantiation

We next address whether petitioner substantiated the Schedule C expenses at issue.

Deductions are a matter of legislative grace, and taxpayers generally bear the burden of proving that they are entitled to any deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must maintain sufficient records to enable the Commissioner to determine their correct tax liability. Sec. 6001.

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or

business. A trade or business expense is ordinary if it is normal or customary within a particular trade, business, or industry; and it is necessary if it is appropriate and helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Welch v. Helvering, 290 U.S. at 113-114. Such expenses must be directly connected with or pertain to the taxpayer's trade or business. Sec. 1.162-1(a), Income Tax Regs.

Generally, no deduction is allowed for personal, living, or family expenses nor for expenditures that are properly categorized as capital expenditures. See secs. 262 and 263. The determination of whether an expenditure satisfies the requirements of section 162 is a question of fact. Commissioner v. Heininger, 320 U.S. at 475.

When a taxpayer establishes that he has incurred deductible expenses but is unable to substantiate the exact amounts, we can estimate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate (Cohan rule). See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In estimating the amount allowable, we bear heavily against the taxpayer whose inexactitude is of his own making. See Cohan v. Commissioner, 39 F.2d at 544.

For certain kinds of business expenses, section 274(d) overrides the Cohan rule.  See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).  Section 274(d) provides that no deduction is allowed with respect to travel, entertainment, or listed property (as defined in section 280F(d)(4)) unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount of expense or item, (2) the time and place of the travel, entertainment, or expense, (3) the business purpose of the entertainment or expense, and (4) the business relationship to the taxpayer of the person or persons entertained.

To substantiate by adequate records, the taxpayer must provide (1) an account book, log, or similar record prepared at or near the time of the expenditure and (2) documentary evidence, which together are sufficient to establish each element of an expenditure.  Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Documentary evidence includes receipts, paid bills, or similar evidence.  Sec. 1.274-5(c)(2)(iii), Income Tax Regs.  To substantiate by sufficient evidence corroborating the taxpayer's own statement, the taxpayer must establish each element by his or her own statement and by documentary evidence or other direct evidence.  Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).  To establish the business

purpose of an expenditure, however, a taxpayer may corroborate his or her own statement with circumstantial evidence.  Id.

  1.  Travel Expenses

Petitioner claimed a travel expense deduction of $18,377, which respondent disallowed in full.  At trial petitioner produced a summary[7] of his Worldwide-related expenses, 16 hotel invoices, an agenda relating to several supermarket visits in Cali, Colombia, two flight confirmations, and several emails.  Petitioner testified generally about his business travel for Worldwide; he also testified about the specific business trips for which he produced invoices.

Respondent concedes on brief that petitioner substantiated $183.32 pertaining to a trip to Cali and $92.62 pertaining to a trip to Medellin, Colombia.  With respect to the remaining reported travel expenses, respondent does not dispute the amounts but contends that petitioner failed to substantiate the business purposes of the trips and the places of travel.  With the exception of one additional expense, we agree with respondent.

One of the hotel invoices in the record shows that petitioner paid $149.17 for a hotel in New Orleans in February 2014.  At trial petitioner credibly testified

-----

[7]Petitioner testified that he created the summary in 2015 for purposes of preparing his 2014 return.

that the business purpose of this trip was to meet a potential supplier of coffee. The record includes an email from petitioner to a business associate referencing this particular meeting. We find this email to be credible circumstantial evidence of the business purpose of the trip. Furthermore, the invoice establishes the amount of the expense and the time and place of travel. We therefore find that petitioner substantiated $149.17 in travel expenses by sufficient evidence corroborating his own statement.

As for the remaining reported travel expenses, petitioner failed to substantiate the business purposes of his trips by adequate records or by sufficient evidence corroborating his own statement. Petitioner's expense summary does not satisfy the adequate records test because it was not prepared at or near the times of the reported expenditures. Neither the summary nor the hotel invoices specify the business purposes of the reported expenditures. With the exception of the above-described trips to Colombia and New Orleans, the record lacks direct or circumstantial evidence of the business purpose for each reported expenditure. The record also lacks documentary evidence, such as receipts, for most of the entries in petitioner's summary.

We do not doubt that petitioner's stewardship of Worldwide required extensive travel during 2014. However, other than travel expenses of $425.11, we

find that he has not met the strict substantiation requirements of section 274(d). Accordingly, petitioner is not entitled to deduct travel expenses in excess of $425.11.

2.    Meals

Petitioner claimed a deduction of $2,790 for meals and entertainment after the 50% limitation under section 274(n).  Respondent disallowed the deduction in full.

As with travel expenses, expenses for meals and entertainment are subject to strict rules of substantiation.  See sec. 274(d); Sanford v. Commissioner, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

To substantiate his expenses for meals and entertainment, petitioner relies on his expense summary.  The summary, which he created in 2015, is not an adequate record because it was not prepared at or near the times of the reported expenditures.  Furthermore, the summary lacks information about the business purpose of each expense and the business relationship of petitioner to the person or persons who were entertained.

We therefore hold that petitioner is not entitled to a deduction for meals and entertainment.

3.    Other Expenses

Respondent also disallowed petitioner's deduction of $6,535 for other

expenses.  That deduction comprises the following reported expenditures:

| Item | Amount |
|---|---|
| Subscription and membership | $889 |
| Service charges | 301 |
| Education | 60 |
| Bank fees | 12 |
| Cell phone | 1,408 |
| Food export fees | 750 |
| Invima registration fee | 3,000 |
| Invima wire fee | 15 |
| Verizon fees | 100 |

On brief respondent concedes that petitioner substantiated the "Invima

registration fee" of $3,000, the "Invima wire fee" of $15, and food export fees of

$750.  We accept respondent's concessions and find that petitioner has

substantiated other expenses of $3,765.

Respondent contends that petitioner failed to substantiate the remainder of

the reported expenses.  We agree.

Petitioner did not testify about his reported expenditures for subscription

and membership, service charges, education, bank fees, and Verizon fees.  While

petitioner's summary contains breakdowns of those expense categories, the entries

therein are vague and give us no indication of how the expenditures pertained to

Worldwide's trade or business. For example, one of the subscription and membership charges in the summary is described as "GS1 US US-09374353870-NJ". Without petitioner's testimony or other evidence, we have no way of knowing how this expense was an ordinary and necessary business expense of Worldwide.

With respect to petitioner's reported cell phone expense of $1,408, we note that respondent allowed a Schedule C deduction for utilities in that same amount. At trial petitioner acknowledged that the reported cell phone expense at issue might be a duplicate deduction. In the light of this admission and the lack of evidentiary support for the expense in the record, we find that petitioner is not entitled to deduct his reported cell phone expenditures.

We therefore conclude that petitioner is not entitled to a deduction for other expenses in excess of the amount respondent has conceded.

III.   Accuracy-Related Penalty

Finally we address whether petitioner is liable for an accuracy-related penalty under section 6662(a). The notice of deficiency contains a boilerplate statement that the underpayment of tax is attributable to four alternative causes: (1) negligence or disregard of rules or regulations, (2) substantial understatement of income tax, (3) substantial valuation misstatement (overstatement), or

(4) transaction lacking economic substance. However, throughout this litigation, respondent has argued that petitioner is subject to the section 6662(a) penalty only for a substantial understatement of income tax.[8]

Section 6662(a) and (b)(2) provides that a taxpayer will be liable for a penalty equal to 20% of the portion of an underpayment of tax attributable to a substantial understatement of income tax. Section 6662(d)(1)(A) provides that an understatement of income tax is substantial if the amount of the understatement exceeds the greater of (1) 10% of the tax required to be shown on the return or (2) $5,000.

The Commissioner bears the burden of production with respect to the accuracy-related penalty under section 6662 and must produce sufficient evidence to establish that it is appropriate to impose such a penalty.[9] Sec. 7491(c); Higbee

---

[8]Having failed to address on brief the other three justifications for the penalty listed in the deficiency notice, respondent has abandoned them. See Thiessen v. Commissioner, 146 T.C. 100, 106 (2016) ("[I]ssues and arguments not advanced on brief are considered to be abandoned.").

[9]The Commissioner's burden of production generally includes establishing compliance with the written supervisory approval requirement of sec. 6751(b)(1). Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016); see also Chai v. Commissioner, 851 F.3d 190, 222 (2d Cir. 2017) (citing Higbee v. Commissioner, 116 T.C. at 446), aff'g in part, rev'g in part T.C. Memo. 2015-42. Sec. 6751(b) requires written supervisory approval of the initial determination of certain penalties. However, this provision

(continued...)

v. Commissioner, 116 T.C. at 446.  If the Commissioner satisfies his burden, the taxpayer then bears the ultimate burden of persuasion.  See Higbee v. Commissioner, 116 T.C. at 446-447.  The taxpayer may meet his burden by proving that he acted with reasonable cause and in good faith with respect to the underpayment.  See sec. 6664(c)(1); see also Higbee v. Commissioner, 116 T.C. at 448; sec. 1.6664-4(b)(1), Income Tax Regs.

The accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer shows that he acted with reasonable cause and good faith.  Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448. Generally, the most important factor is the extent of the taxpayer's effort to assess his proper tax liability.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Reliance upon the advice of a tax professional may establish reasonable cause and good faith for the purpose of avoiding liability for the section 6662(a) penalty.  See United States v.

---

[9](...continued)
does not apply to a "penalty automatically calculated through electronic means." Sec. 6751(b)(2)(B).  Because the parties stipulated that the penalty at issue was automatically calculated through electronic means, respondent need not show compliance with sec. 6751(b) to meet his burden of production.  See also Walquist v. Commissioner, 152 T.C. __, __ (slip op. at 20) (Feb. 25, 2019) (concluding that a substantial understatement penalty under sec. 6662 that was "determined by an IRS computer program without human input or review" was a "penalty automatically calculated through electronic means" within the meaning of sec. 6751(b)(2)(B)).

Boyle, 469 U.S. 241, 250-251 (1985).  Whether reasonable cause exists when a taxpayer has relied on a tax professional to prepare a return must be determined on the basis of all the facts and circumstances.  See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

This Court has stated that reasonable cause and good faith are present where the record establishes by a preponderance of the evidence that:  (1) the taxpayer reasonably believes that the professional upon whom the reliance is placed is a competent tax adviser who has sufficient expertise to justify reliance, (2) the taxpayer provides necessary and accurate information to the adviser, and (3) the taxpayer actually relies in good faith on the adviser's judgment.  Id. at 99.

If the Rule 155 computation confirms a substantial understatement for the taxable year in issue, then respondent has met his burden of producing evidence that the penalty is justified.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446.

Petitioner, on the other hand, has not offered any evidence that he acted with reasonable cause.  While his testimony includes a brief mention of an "accountant", he did not describe that person or offer any details about their exchange of information.  We are therefore unable to conclude that petitioner provided necessary and accurate information to a competent tax adviser.

Accordingly, in the event the Rule 155 computation shows that petitioner's understatement of income tax exceeds the greater of $5,000 or 10% of the amount of tax required to be shown on the return, we conclude that the underpayment is attributable to a substantial understatement of income tax for which he has not shown reasonable cause.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.